Anthony Crawford GARRETT,
Appellant,

v.

The STATE of Texas, Appellee.

No. 01–90–00522–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

Aug. 22, 1991.

Michael P. Fosher, Houston, for appellant.

John B. Holmes, Harris County Dist. Atty., Linda West, Karen Morris, Asst. Harris County Dist. Attys., for appellee.

Before DUGGAN, O'CONNOR and MIRABAL, JJ.

## OPINION

O'CONNOR, Justice.

This case involves two questions: (1) Whether the prosecutor gave racially neutral reasons for exercising peremptory strikes against black members of the venire; and (2) whether the victim's sufferings after the crime is admissible at the guilt stage of the trial. We answer the first yes, the second no, and affirm.

The appellant, Anthony Wayne Garrett, was indicted for aggravated robbery by an indictment that charged:

[W]hile in the course of committing theft of property owned by Sharon Fulce and with intent to obtain and maintain control of the property, defendants did intentionally and knowingly threaten and place Sharon Fulce in fear of imminent bodily injury and death, and the Defendant did then and there use and exhibit a deadly weapon, to-wit, a firearm.

After a trial to the jury, the appellant was found guilty, and the jury assessed punishment at 75 years confinement and a fine of $10,000.

### 1. Fact summary

Sharon Fulce, the complainant, testified she left her house early one morning to walk her four month-old son to the babysitter. Suddenly, a car pulled beside Fulce, and the appellant stepped out of the car, leaving the car door open and the engine running. The appellant told Fulce to get in the car. When she refused, the appellant told Fulce to give him her "f—ing purse or [I] will blow [your] brains out." Stunned, Fulce looked at the appellant in disbelief. The appellant then pulled his jacket open so she could see he had a gun. The appellant grabbed her purse and left. Fulce made

note of the car's license plate number and committed it to memory. Fulce reported the license plate number, along with a description of the car, to the police department.

Three days later, a police officer spotted a car, matching the description given by Fulce and with the same license plate number, in the parking lot of an apartment complex. While waiting for a backup unit, the officer saw the appellant get into the car and begin to drive away. When the officer pulled his patrol car behind him, the appellant accelerated, in an apparent attempt to escape. The chase ended in the parking lot of another apartment complex when the appellant jumped from the car and ran away. The officer ran after the appellant, but lost him in the complex. About 35 minutes later, a maintenance man told the officer where the appellant had gone. The officer found the appellant hiding in a closet in one of the apartments and arrested him.

Fulce identified the appellant in a lineup and later in court. The patrol officer, who arrested the appellant, also identified him in court.

### 2. The *Batson* motion

In his first point of error, the appellant argues the trial court erred by finding the State did not discriminate on the grounds of race in its use of peremptory challenges against four potential jurors who were black. The appellant argues that he made a prima facie case of racial discrimination and the State did not give racially neutral explanations as to why it exercised its peremptory strikes against four black members of the venire.

The record reflects that the appellant is black; that the State exercised peremptory challenges against four of 13 black members of the venire panel; and that three black members served on the jury. The appellant contends that the evidence was sufficient to establish a prima facie case of purposeful discrimination.

At trial, after both parties exercised their peremptory strikes and the 12 jurors were

identified, the judge asked the jurors to wait in the jury deliberation room and sent the rest of the panel to wait in the hallway. Counsel for the defense then made his *Batson*[1] motion, alleging that four members of the venire were struck for racial reasons. The trial court then conducted a *Batson* hearing at which the prosecutor explained his reasons for striking the four black members of the venire. At the conclusion of the *Batson* hearing, the trial judge stated that the reasons given by the State for its strikes were racially neutral, and denied the appellant's motion.

Here is a summary of the *Batson* hearing with excerpts from the voir dire.

### Mr. Freeman, number 5

At the *Batson* hearing, the prosecutor said he noted on his jury sheet that venire person number five, Mr. Freeman, became "wishy-washy" and he seemed to agree he could not follow the one-witness rule, that is, he might not be able to convict on the testimony of a single eyewitness. The following is the recorded voir dire of venire person number five:

Defense Counsel: [H]ow many of you think that, one he has been indicted; two, he has been arrested; three, they didn't brought [sic] him down here to trial, the State wouldn't be wasting their money to take him to trial. Obviously, he has done something. Anybody feel like that?

. . . .

Defense Counsel: You, Mr. Freeman?
Mr. Freeman: I think he might not have done anything. You know, the way the court system is set up if he was accused of something whether he did it or not it's, you know, the State's job to bring them to trial to find out whether he did it.

### Mr. Redman, number 7

The prosecutor said that his notes reflect that he struck venire person number seven,

Mr. Redman, because he believed Mr. Redman also would have a problem following the one-witness rule. At the bench, Mr. Redman said something different, causing the prosecutor to distrust Mr. Redman. The following is the recorded voir dire of venire person number seven:

Defense Counsel: Does everybody still feel comfortable with the one-person rule? First row? Does everybody feel comfortable with it?
I see hesitation. I have to ask somebody. Mr. Redman, you sat there kind of quiet like.
Mr. Redman: I don't—let me see on this situation. I don't feel too comfortable with that.

Mr. Redman was brought before the bench for individual questioning after voir dire. At the bench, Mr. Redman stated he had no problem with the one-witness rule.

### Ms. Goodie, number 13

The prosecutor said he struck venire person number 13, Ms. Goodie, because she appeared "to be a champion for the defendant's rights" and was "very, very strong and very vocal" in responding to questions from the defense counsel. When the prosecutor asked the venire panel about the possibility of convicting on the testimony of a single eyewitness, Ms. Goodie stated, "Depending on what he says and if I feel he can or she can, yeah."

### Mr. Richard, number 32

The prosecutor said he struck venire person number 32, Mr. Richard, because Mr. Richard stated he would definitely require the State to produce the actual gun used during the offense, and to show the appellant's motive. Later, at the bench, Mr. Richard indicated something different, and the prosecutor did not believe him. The following is the voir dire of venireperson number 32:

Prosecutor: ... Would anybody here require that I bring the gun that was used

---

**1.** *Batson v. Kentucky,* 476 U.S. 79, 96, 106 S.Ct. 1712, 1723, 90 L.Ed.2d 69 (1986). We recognize that the United States Supreme Court modified *Batson* in *Powers v. Ohio,* —— U.S. ——, 111

S.Ct. 1364, 1373, 113 L.Ed.2d 411 (1991), by holding that a criminal defendant may object to a race-based exclusion even if the defendant and the excluded juror do not share the same race.

**336**

into the courtroom? Anybody on the first row? ... You would? Mr. Richard, is that your name?
Mr. Richard: Yes.

. . . .

Prosecutor: Are you going to want to know what that person's motivation was for doing that before you could find a person guilty of aggravated robbery?
Mr. Richard: Yes.

Later, when Mr. Richard was brought up to the bench after voir dire, he stated he would not require the State to do either. The State contends that Mr. Richard's assertion that he would require of the State more than the law requires was a racially neutral reason.

### The law of *Batson*

■ If a defendant proves a prima facie case of purposeful discrimination, the State must counter with a racially neutral explanation for its challenges. *Batson v. Kentucky*, 476 U.S. at 97, 106 S.Ct. at 1723. According to *Batson*, this explanation must be more than a general denial of "discriminatory motive." *Batson*, 476 U.S. at 98, 106 S.Ct. at 1723–24. Unless the State contradicts, impeaches, or rebuts with other evidence, the defendant's proof of a prima facie case is sufficient to establish discrimination. *Tompkins v. State*, 774 S.W.2d 195, 201 (Tex.Crim.App.1987), *aff'd*, 490 U.S. 754, 109 S.Ct. 2180, 104 L.Ed.2d 834 (1989). The Court of Criminal Appeals has concluded that the State's evidence offered to contradict, impeach, or rebut the prima facie case of discrimination must be "legally adequate to support a judgment in favor of the State." *Tompkins*, 774 S.W.2d at 202.

■ We consider the record on appeal in the light most favorable to the trial judge's ruling; if we find the ruling is supported by the record, we will affirm the trial court. *Keeton v. State*, 749 S.W.2d 861, 870 (Tex.Crim.App.1988); *Straughter v. State*, 801 S.W.2d 607, 613 (Tex.App.—Houston [1st Dist.] 1990, no pet.). The Court of Criminal Appeals has noted that

the trial court's ruling "should be given great deference by a reviewing court." *Tompkins*, 774 S.W.2d at 201; *Henry v. State*, 729 S.W.2d 732, 734 (Tex.Crim.App. 1987); *Straughter*, 801 S.W.2d at 613–14. Generally, we should only reverse if no rational fact finder, using a preponderance of the evidence test, could accept the prosecutor's reasons as racially neutral. *Tompkins*, 774 S.W.2d at 202.

■ It is acceptable to challenge a juror based on the way that juror reacts to defense counsel, as well as upon the juror's verbal statements in the record. *Straughter*, 801 S.W.2d at 614; *Gardner v. State*, 782 S.W.2d 541, 544 (Tex.App.—Houston [1st Dist.] 1989, pet. ref'd). The State may also base its peremptory strikes on the prosecutor's legitimate "hunches" and past experience, as long as such strikes are not racially motivated. *Straughter*, 801 S.W.2d at 614; *York v. State*, 764 S.W.2d 328, 331 (Tex.App.—Houston [1st Dist.] 1988, pet. ref'd).

■ Here, the State gave racially neutral reasons, based on both verbal and nonverbal responses, and on the general demeanor of the venire persons. Once the State provided racially neutral reasons, it became the appellant's burden to persuade the trial judge, by a preponderance of the evidence, that the allegations of purposeful discrimination were true in fact and that the prosecutor's reasons were merely a sham or a pretext. *Straughter*, 801 S.W.2d at 613; *see also Tompkins*, 774 S.W.2d at 202.

■ The record supports racially neutral reasons for the State's four peremptory strikes. After considering the evidence in the light most favorable to the trial court's ruling, we overrule appellant's first point of error.

### 3. Irrelevant testimony

In his second point of error, the appellant contends that the trial court erred by admitting irrelevant testimony during the guilt-innocence phase of the trial. The appellant alleges that some of Fulce's testimony was irrelevant and was offered only

to excite the emotions of the jury to the appellant's detriment. The appellant made an objection, which the court overruled, to the following testimony:

Complainant: It's made me a very nervous person, where I was a very trusting person, and I always wanted to believe that people were all good, you know. I work with kids that were self-abusive and abusive toward others.

My job was very stressful. It took a lot of concentration because I had to do, [sic] write educational programs for them and determine what was best for them. So, it was a lot of stress, a lot of work that you had to concentrate on.

I tried for like, I tried to concentrate after then and when it first happened the next day I didn't want to go. I didn't want to go to work. I didn't want to go out of my door. I was scared. I just didn't want to go out. I had to make myself go out because I had two kids to feed.

I tried for a month after that to just keeping myself going but it got to the point where I just couldn't go out because I was so paranoid every time someone would walk by me and even now when someone gets close to me or walks by me I am scared because I think they [sic] are going to hurt me.

The appellant asserts that the testimony had no relevance to any contested issue and, therefore, should not have been admitted during the guilt-innocence phase. Citing *Miller–El v. State*, 782 S.W.2d 892, 895 (Tex.Crim.App.1990), the appellant contends the evidence of a victim's future hardship caused by the charged offense did not have any relevance at the guilt stage of trial.

In *Miller–El*, the Court of Criminal Appeals held that evidence of the after-effect of an injury caused to the victim in the course of the crime, was admissible at the *punishment* phase to show the circumstances of the offense. 782 S.W.2d at 895. In reaching its opinion, the court distinguished situations where such evidence was offered at the guilt stage:

We agree the bare fact of [the complainant's] paralysis was admissible at the guilt stage of [defendant's] trial as probative of [defendant's] intent to kill. . . . We cannot agree, however, that [the witness'] testimony regarding [the complainant's] future hardship as a paraplegic had any tendency to make more or less probable the existence of any fact of consequence at the guilt state of trial.

782 S.W.2d at 895. Clearly, the Court of Criminal Appeals would hold that, although evidence of the after-effects of a crime is admissible at punishment, it is *not* admissible at the guilt stage of the trial.

The State attempts to distinguish *Miller–El*. Fear, the State argues, was not an element the State was required to prove in *Miller–El*, where the defendant was charged with murder or attempted capital murder. The State concedes that the after-effects of an injury are not admissible if they do not go to the issue of the charged offense. Here, the State argues, fear was an element of the charged offense. The State asserts that the insecurity and nervousness Fulce experienced after the robbery was some evidence of this fear.

The State relies on *Levell v. State*, 453 S.W.2d 831, 832 (Tex.Crim.App.1970). In *Levell*, the court permitted the victim of an armed robbery to testify at the guilt stage about his injuries, the nature, the extent, the treatment, and his condition at time of trial. The *Levell* court, in an opinion patched together from quotes from the defendant's brief and from earlier opinions, upheld the conviction, leaving to us to glean the reasons from its cryptic overruling of *Reynolds v. State*, 372 S.W.2d 540, 541 (Tex.Crim.App.1963) and *Fowler v. State*, 171 Tex.Crim. 600, 352 S.W.2d 838, 840–41 (1962). *Levell*, 453 S.W.2d at 833. Quoting from its decision in *Roberts v. State*, 172 Tex.Crim. 500, 360 S.W.2d 883, 885 (1961) (quoting *Fields v. State*, 272 S.W.2d 120, 122 (Tex.Crim.App.1954)), the court said:

'On the allegation of violence the state may prove the injuries sustained as the

result of such violence. In fact, such is the best proof thereof.'

*Levell,* 453 S.W.2d at 832.

 We do not believe either the *Miller–El* or the *Levell* opinions permit the introduction of the after-effects of the crime at the guilt stage. We believe the testimony introduced by the State over the appellant's objection was not admissible. *Miller–El,* 782 S.W.2d at 895.

The issue we now reach is whether the introduction of the testimony was reversible error. TEX.R.APP.P. 81(b)(2) provides that if the appellate record reveals error in the trial, the appellate court shall reverse the judgment unless the court determines beyond a reasonable doubt that the error made no contribution to the conviction or the punishment. *Arnold v. State,* 786 S.W.2d 295, 297 (Tex.Crim.App.1990); *Harris v. State,* 790 S.W.2d 568, 584 (Tex.Crim. App.1989). The *Harris* opinion teaches us to first isolate the error and its effect, and then ask if a rational trier of fact might have reached a different result if the error and its effects had not happened. 790 S.W.2d at 588.

The isolated error here is that the trial court permitted the complainant to testify about her fear four months after the robbery. The effect of her testimony was limited to the one instance during the trial—the State made no mention of it in final argument. In addition, the complainant's testimony did not undermine the appellant's defense—the appellant's trial strategy was that the complainant misidentified him, not that no crime occurred. Here, Fulce made a positive identification of the appellant.

In the end, *Harris* requires that we decide if the trial was a fair one. 790 S.W.2d at 588. After reviewing the record, we find it was. The error in admitting Fulce's testimony about the after-effects of the crime, though error, did not contribute to the finding of guilt.

We overrule appellant's second point of error.

We affirm the judgment.

MIRABAL, J., concurring.

MIRABAL, Justice, concurring.

I concur, but I disagree with the majority's conclusion, under point of error two, that the trial court erred in allowing the complainant to testify at the guilt-innocence stage about the effect of the assault on her.

To prove the offense of robbery, the State had the burden to prove beyond a reasonable doubt that complainant was *actually* placed in fear of imminent bodily injury or death by appellant. TEX.PENAL CODE ANN. § 29.02 (Vernon 1989). The offense occurred in February 1990, and the trial was conducted four months later, in June 1990. In my opinion, complainant's testimony about her paranoia and fear the day after the offense and one month later, and even that four months later when someone walks by her she gets scared because she thinks they are going to hurt her, was relevant testimony and admissible under TEX.R.CRIM.EVID. 401 and 402. *See Montgomery v. State,* 810 S.W.2d 372 (Tex. Crim.App.1991).