NO. 07-00-0025-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

APRIL 3, 2003

_____

MICHAEL XAVIER SMITH, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 282ND DISTRICT COURT OF DALLAS COUNTY;

NO. F-9970058-MS; HONORABLE KAREN J. GREENE, JUDGE

_____

Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

OPINION

Michael Xavier Smith appeals from his conviction for capital murder and sentence of life imprisonment. We affirm.

## BACKGROUND

On November 22, 1998, Rudecindo Villatoro Alfara (Alfara) was sitting in his truck outside his apartment with his nephew, Nelson Bladmir Alfara (Nelson). A group of three men approached them. The men walked past Alfara and Nelson, then one of the men returned. This man, who walked with a limp, demanded money, then immediately shot Nelson with a revolver. Nelson died at the scene.

Appellant was arrested and indicted for capital murder. The case was tried to a jury. Appellant was convicted and sentenced to confinement in the Institutional Division of the Texas Department of Criminal Justice for life.

By two issues appellant urges that we reverse his conviction. First, he contends that the trial court erred in finding that the State exercised its peremptory challenges in a racially neutral manner and in overruling appellant's Batson[1] objection. Second, appellant challenges the factual sufficiency of the evidence to support the jury's verdict.

## ISSUE 1: THE BATSON CHALLENGE

By his first issue, appellant, a black male, alleges that the State engaged in purposeful discrimination in exercising its peremptory strikes against black potential jurors so that no black jurors would sit on the jury of appellant's trial.

---

[1]Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986).

The deliberate or purposeful denial of jury participation to citizens because of race violates an accused's rights under the Equal Protection Clause of the Fourteenth Amendment to the Federal Constitution. Id. *See also* TEX. CODE CRIM. PROC. ANN. art. 35.261 (Vernon 1989). In Batson, the Supreme Court set out a three step test for the courts to follow in determining whether there has been an equal protection violation in the context of racial discrimination. See Rhoades v. State, 934 S.W.2d 113, 123 (Tex.Crim.App. 1996). A defendant who challenges the State's exercise of a peremptory challenge must prove a *prima facie* case of racial discrimination. If such a *prima facie* showing is made, the burden of production falls to the proponent of the strike to tender a race neutral explanation. Id. If a race neutral explanation is tendered, the trial court must evaluate the explanations in light of the circumstances to determine whether the reasons tendered are merely a pretext. See Johnson v. State, 879 S.W.2d 313, 316 (Tex.App.–Amarillo 1994, no pet.) The Court of Criminal Appeals has articulated a non-exclusive list of factors for the trial court to consider in weighing race-neutral explanations. See Whitsey v. State, 796 S.W.2d 707, 713 (Tex.Crim.App. 1989). Those factors are:

(1) the reason given for the peremptory challenge is not related to the facts of the case;

(2) there was a lack of questioning to the challenged juror or a lack of meaningful questions;

(3) disparate treatment (persons with the same or similar characteristics as the challenged juror were not struck);

(4) disparate examination of members of the venire such as questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and

(5) an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

Id. at 713-14.

We review the evidence in the light most favorable to the trial court's decision, and determine whether the record supports the findings of the trial judge. See Pondexter v. State, 942 S.W.2d 577, 581 (Tex.Crim.App. 1996). Our review is based on the evidence that was before the trial court at the time of its ruling. See Parra v. State, 935 S.W.2d 862, 870 (Tex.App.–Texarkana 1996, pet. ref'd). If there is sufficient evidence to support the trial judge's finding of no purposeful discrimination, the finding will not be disturbed on appeal. See Fuentes v. State, 991 S.W.2d 267, 278 (Tex.Crim.App. 1999).

In the matter before us, we need not consider whether appellant proved a *prima facie* case of racial discrimination because the trial court took evidence as to and ruled on the ultimate issue of intentional discrimination. See Goode v. Shoukfeh, 943 S.W.2d 441, 445 (Tex. 1997); Johnson, 879 S.W.2d at 315. Thus, we consider whether the State produced evidence of a race-neutral reason for the peremptory challenge. See Rhoades, 934 S.W.2d at 123. Evidence of a reason offered by the State, as long as it is facially valid and not inherently discriminatory, is sufficient to rebut a *prima facie* case of intentional discrimination. See Williams v. State, 937 S.W.2d 479, 485 (Tex.Crim.App. 1996); Yarborough v. State, 983 S.W.2d 352, 354 (Tex.App.–Fort Worth 1998, no pet.).

The prosecutor stated that he struck jurors 2 and 6 because those jurors both had either a friend or relative who had served time in the state penitentiary. In regard to juror 30, the prosecutor stated that she was struck because she had a problem with the "one-

4

witness" rule[2] and because she had a son who was, at the time of appellant's trial, in jail in Dallas County awaiting trial on a charge of unlawful carrying of a weapon. But, the fact that a potential juror has or has had a family member in trouble with the law or formally accused of a crime is a valid, race-neutral reason to exercise a peremptory strike against that juror. See Whitaker v. State, 977 S.W.2d 869, 875 (Tex.App.–Beaumont 1998, pet. ref'd); Ealoms v. State, 983 S.W.2d 853, 856 (Tex.App.–Waco 1998, pet. ref'd); Adams v. State, 862 S.W.2d 139, 145 (Tex.App.–San Antonio 1993, pet. ref'd). Moreover, a prosecutor's belief that a potential juror could not convict on the testimony of one witness has also been held to be a valid, race-neutral explanation for the State's exercise of a peremptory challenge. See Esteves v. State, 849 S.W.2d 822, 823 (Tex.Crim.App. 1993); Tate v. State, 939 S.W.2d 738, 746-47 (Tex.App.–Houston [14th Dist.] 1997, pet. ref'd); Garrett v. State, 815 S.W.2d 333, 335-36 (Tex.App.–Houston [1st Dist.] 1991, pet. ref'd). Thus, the State articulated racially-neutral reasons for striking jurors 2, 6 and 30.

Proceeding to the third step in the analysis, we next consider in light of the circumstances of the case whether the race-neutral reasons offered by the State are supported by the record or are merely pretexts for racial discrimination. See Johnson, 879 S.W.2d at 316. In this regard, appellant contends that the State disparately treated the venire by failing to strike non-minority[3] potential jurors who shared the same or similar

---

[2]No objection was lodged to questions concerning the "one-witness rule."

[3]The record does not affirmatively demonstrate the racial or ethnic background of every potential juror on the panel. For convenience, jurors not affirmatively demonstrated to be black shall be referred to as "non-minority" jurors, regardless of any potential juror's actual status as a member of a racial or ethnic minority.

5

characteristics the State found objectionable in black potential jurors who were struck, and disparately examined the venire by failing to ask the same questions of non-minority potential jurors who possessed the same or similar characteristics the State found objectionable in black potential jurors in an attempt to manipulate the record so as to disguise the State's purposeful racial discrimination in the exercise of its peremptory challenges.

As previously noted, the State's evidence was that it struck black potential jurors 2 and 6 for the racially-neutral reason that they had either a friend or relative who had served time in the state penitentiary. The prosecutor stated that he challenged non-minority potential jurors 7, 16, 19 and 24 for the same reason. The prosecutor stated specifically that in exercising the State's peremptory challenges he differentiated between potential jurors who had friends or relatives who had been placed on probation versus potential jurors who had friends or relatives who had served time in the state penitentiary. On cross-examination, the prosecutor stated that he did not strike non-minority potential jurors 1, 12, 20 or 31 because his notes did not demonstrate that any of those jurors had friends or relatives who had served time in the penitentiary.

The record reflects that Juror 1 had an old friend who had been charged with burglary of a house approximately seven years prior. Juror 1 never stated whether his friend had been convicted or if his friend ever served any time in the state penitentiary. Juror 12 stated that she had an uncle who was sentenced to probation approximately three years prior. Juror 20 stated that he had a brother and a friend who had been charged with "drugs" in Dallas County, and that he himself had been charged with DWI 14 years prior.

6

Juror 20 never stated whether he, his brother or his friend had even been convicted or served any time in the penitentiary. Juror 31 stated that he had two distant cousins who had both been charged with child abuse. In the case of one cousin, Juror 31 stated that the cousin was charged with and "punished" for child abuse. He did not elaborate on what form of punishment his cousin received. In regard to the other cousin, Juror 31 stated that his conviction was later overturned. He also stated that "now they're not in the pen." Viewed in a light most favorable to the trial court's decision, his statements are insufficient to conclude that either of his cousins had been in the penitentiary. The record, therefore, does not mandate a conclusion that the State challenged only black jurors who had friends or relatives who had served time in the penitentiary. In fact, the record demonstrates that the State challenged non-minority potential jurors 7, 16, 19 and 24 for the same reason.[4] Additionally, in regard to non-minority potential jurors 1, 12, 20 and 31, the prosecutor's statement that he did not strike those non-minority potential jurors because his notes did not demonstrate that any of them had friends or relatives who had served time in the penitentiary is supported by the record of *voir dire*.

In regard to juror 30, the prosecutor stated that she was challenged for two reasons, first, because she had a problem with the "one-witness rule," and second, because she had a son who was then incarcerated awaiting trial in the same jurisdiction for the offense

---

[4]In regard to juror 24, a non-minority, the prosecutor stated at the Batson hearing that he struck her because his notes showed that her ex-husband was in the penitentiary. A review of the record of *voir dire*, however, reveals that juror 24 said that her ex-husband had received probation. Therefore, in regard to juror 24, the prosecutor's notes were not correct. As the prosecutor made the statement in regard to a non-minority potential juror that he struck, there is no issue concerning purposeful racial discrimination on the part of the State due to the prosecutor's inaccurate notes.

of Unlawful Carrying of a Weapon. Appellant argues that the State failed to strike potential non-minority jurors who also expressed problems following the one-witness rule. However, the record demonstrates that the prosecutor struck juror 25, a non-minority, because she also had a problem following the rule.

Moreover, even assuming, *arguendo*, that there were other non-minority potential jurors who expressed difficulty understanding or following the rule but were nevertheless not struck by the State, such treatment does not automatically lead to a finding of purposeful racial discrimination by the State. Disparate treatment in the exercise of peremptory challenges cannot automatically be imputed to the State in every situation in which the prosecutor states a combination of reasons for challenging a particular juror, and one of the prosecutor's stated reasons would technically apply to another potential juror whom the prosecutor found acceptable. See Adanandus v. State, 866 S.W.2d 210, 224-25 (Tex.Crim.App. 1993). Different jurors may possess the same objectionable characteristic but in differing degrees. See Cantu v. State, 842 S.W.2d 667, 689 (Tex.Crim.App. 1992). Such qualitative distinctions may cause a prosecutor to challenge one such juror and not another. Id. Here, the record shows that the State struck at least one non-minority potential juror for the same reason as juror 30. Moreover, the prosecutor also stated that he struck juror 30 for another reason which has already been discussed above and determined to be racially neutral by the trial court, supported by the record, and non-pretextual. Therefore, under the circumstances of the case, there was sufficient evidence for the trial court to find that the State did not disparately exercise its peremptory challenges.

8

For the first time on appeal, appellant further argues that the State failed to strike four non-minority potential jurors seated on the fourth and fifth row of the jury panel, even though the record conclusively demonstrates that these jurors had friends or relatives that had served time in the state penitentiary.[5] Appellant argues that the State's failure to strike these non-minority potential jurors who shared the same characteristics which the State found objectionable in black potential jurors amounted to purposeful racial discrimination by the State in the exercise of its peremptory challenges.

Appellant has preserved this issue for appeal.[6] The record, however, contains no evidence as to the prosecutor's reasons for not striking the non-minority potential jurors in question. It may be, for example, that the prosecutor did not intend to strike any jurors after a particular number had been reached. See Williams v. State, 939 S.W.2d 703, 706 (Tex.App.–Eastland 1997, no pet.) (prosecutor's explanation that he struck all jurors who shared a particular characteristic up to juror number 58 constituted a legitimate race-neutral reason for the exercise of peremptory challenges).

The record contains affirmative evidence that the prosecutor's strikes were for legitimate race-neutral reasons. Viewing the evidence in the light most favorable to the trial court's decision, the State's unexplained (and unexplored) failure to strike the venire-

_____

[5]Potential juror Taylor, a fourth-row juror, had a friend who received five years in the state penitentiary. Another potential juror in the fourth row had a son who received four years penitentiary time. Potential juror Curtis, seated in the fifth row, had a friend in the state penitentiary. Potential juror Nelson, also seated in the fifth row, was then married to a man who was serving a life sentence in the penitentiary. None of these non-minority potential jurors were struck by the State.

[6]See Young v. State, 826 S.W.2d 141, 146 (Tex.Crim.App. 1991).

members in question is insufficient evidence of purposeful racial discrimination to justify disturbing the trial court's decision.

Next, appellant argues that the State disparately examined black potential jurors so as to develop a record that would support the State's explanations for striking those jurors, while not asking the same questions of non-minority potential jurors. Appellant alleges that when a potential black juror indicated that he or she had a friend or relative who had experienced trouble with law enforcement, the State consistently asked the potential juror about the disposition of the case, whereas in regard to non-minority potential jurors, the State consistently avoided asking about the disposition of any friends' or relatives' cases. Appellant alleges that the disparate examination was the result of purposeful racial discrimination by the State.

An analysis of the record indicates that appellant's allegation of disparate examination is not correct. First, of the 29 potential jurors who indicated they had a friend or relative who had experienced trouble with the law, 13 jurors volunteered information regarding the disposition of such cases. The State questioned another 10 jurors regarding the disposition of their friends' and relatives' cases.[7] Two of those jurors were black, while the other eight were non-minority. The non-minority potential jurors who were questioned included juror 7, juror 12, juror 19, juror 24, juror Margotta, and juror Matherson. Furthermore, from the record of the strikes exercised by the State and the State's explanation of those strikes at the Batson hearing, the trial court could have concluded that

_____

[7]The remaining jurors either were not questioned by the State regarding disposition or gave information that was non-responsive to the questioning.

10

the jurors' answers to the State's questioning led directly to the striking by the State of non-minority potential jurors 7, 19 and 24.[8]  Thus, the record demonstrates that the State questioned both black and non-minority potential jurors regarding the disposition of their cases.  The State is not required to ask every potential juror any specified rubric of questions.  See Chambers v. State, 866 S.W.2d 9, 24 (Tex.Crim.App. 1993).

In sum, the State provided racially-neutral justifications for striking each juror.  The State's justifications and the trial court's conclusions are supported by the record. Appellant's first issue is overruled.

## ISSUE 2: FACTUAL SUFFICIENCY OF THE EVIDENCE

By his second point of error, appellant contends that the evidence was factually insufficient to support the jury's verdict.  He argues that the evidence was factually insufficient because the State's eyewitness vacillated in his identification of appellant, and because there was evidence supporting appellant's defensive alibi theory.

When reviewing the factual sufficiency of the evidence, all of the evidence is reviewed.  See Cain v. State, 958 S.W.2d 404, 407 (Tex.Crim.App. 1997).  Where, as here, the verdict is in favor of the party with the burden of proof, the verdict is set aside only if the proof of guilt is either so weak or so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust.  See Johnson v. State, 23 S.W.3d 1, 11 (Tex.Crim.App. 2000).

---

[8]See n.4, supra, concerning the State's peremptory strike of juror 24.

11

Unless the record clearly reveals that a different result is appropriate, an appellate court must defer to the factfinder's determination concerning what weight to give contradictory testimonial evidence because resolution often turns on an evaluation of credibility and demeanor, which is primarily a determination to be made by observation of the witnesses giving the testimony. Id. at 8. The trier of fact has discretion to accept or reject all or any part of any witness's testimony and reconcile conflicts in the evidence. See Losada v. State, 721 S.W.2d 305, 309 (Tex.Crim.App. 1986). The court of appeals is not free to re-weigh the evidence and set aside a jury verdict merely because it believes that a different result is more reasonable. See Cain, 958 S.W.2d at 407.

At the outset, it should be observed that mistaken identification and alibi are defensive theories offered to negate the identity element of the charged offense. See Giesberg v. State, 945 S.W.2d 120, 124 (Tex.App.–Houston [1st Dist.] 1996 aff'd, 984 S.W.2d 245 (Tex.Crim.App. 1998). Therefore, appellant's issue is treated as challenging the sufficiency of the evidence to prove identity. Id.

Alfara identified appellant in court as the person who shot his nephew Nelson. Alfara testified that appellant and two other men walked up to them as they were sitting outside his apartment; appellant said "The money, Bato"; and then appellant immediately shot the victim. Alfara testified that appellant and the other men then slowly ran away, and appellant was limping as he ran. Alfara testified that he got a good look at appellant, and that he saw his face clearly.

12

Alfara testified that he previously identified appellant as the perpetrator on January 3, 1999 from a police photo-lineup. He also testified that in a pre-trial hearing the day before appellant's trial, he said that he was not sure if appellant was the perpetrator. Alfara testified that the reason he said he was not sure was because he was afraid of what might happen to him if he told the truth. He said that he was afraid because his brother told him about someone in Houston who was killed after identifying someone.

Alfara was cross-examined regarding prior inconsistent statements. He testified that he described the perpetrator to police as being tall and young, whereas appellant appeared to him in court to be about 5' 6" or 5' 7"[9] and about 35 years old. Alfara also stated that in the pre-trial hearing, he did not say anything about the perpetrator slowly running away.[10]

Appellant also introduced evidence of an alibi. Appellant's brother and two sisters testified that appellant had spent the entire weekend of November 22, 1998, at his sister Beatrice's house in Pleasant Grove. Appellant's witnesses all testified that appellant was using crutches to walk that weekend and that appellant did not have a car to take him anywhere. On cross-examination, however, appellant's brother repeatedly testified that he was not good at keeping up with dates and did not know the date, or even the month, that appellant was at his sister's house. Appellant's brother also testified that appellant could have used the bus for transportation. Appellant's sister Lois Head testified that she did not see appellant every day while he stayed with Beatrice. Moreover, she testified that

---

[9]Alfara stated that he considered appellant to be tall at that height.

[10]On re-direct, Alfara testified that in a statement he gave to police, he said "He shot my nephew with a small, stainless revolver, and then walked away with no hurry."

she twice saw him walking without his crutches. Thus, appellant's sister Beatrice Smith was the only defense witness to testify that she was certain that appellant was at her house the entire weekend that the murder was committed. She also testified that appellant was at her house at about 11:30 or 11:45 on December 9, 1998.

In rebuttal, the State presented three witnesses. The first witness was Christopher Allen, a police officer with the City of Dallas. Officer Allen testified that he encountered appellant in an area near the Apple Creek apartments just after midnight on December 10, 1998. Johanna Rodriguez, the manager of the Apple Creek apartments, testified that she recalled seeing appellant in the vicinity of the Apple Creek apartments around Thanksgiving. Finally, the State called Melvin Williams, a private security guard for the Apple Creek apartments. Williams testified that he saw appellant at the apartment complex the night after the murder.

The positive identification of a defendant as the perpetrator is sufficient to support a conviction. See Garcia v. State, 563 S.W.2d 925, 928 (Tex.Crim.App. 1978); Ford v. State, 509 S.W.2d 317, 318 (Tex.Crim.App. 1974); Lopez v. State, 815 S.W.2d 846, 849 (Tex.App.–Corpus Christi 1991, no pet.). Regardless of Alfara's prior statements, at trial he positively identified appellant as the perpetrator of the crime. As appellant does not challenge the admissibility or reliability of Alfara's in-court identification, appellant's challenge goes to the weight of the evidence, not its admissibility. See Bledsoe v. State, 21 S.W.3d 615, 621 (Tex.App.–Tyler 2000, no pet.). The jury was in the best position to judge Alfara's demeanor and credibility and determine the appropriate weight to give his in-court identification of appellant as the perpetrator. See Johnson, 23 S.W.3d at 8. The

fact that Alfara may have previously been uncertain in his identification of appellant as the perpetrator was merely a factor for the jury to consider in assessing the weight of his testimony. See Garcia, 563 S.W.2d at 928; Bledsoe, 21 S.W.3d at 621.

In regard to appellant's alibi evidence, the jury is entitled to disbelieve evidence of an alibi. See Ford, 509 S.W.2d at 318. Even if the prosecution fails to rebut alibi evidence, the jury is not required to believe such evidence or acquit the defendant. See Johnson v. State, 449 S.W.2d 479, 480 (Tex.Crim.App. 1970). Where, as here, there was conflicting testimony regarding appellant's alibi, the jury possessed the sole discretion to decide which evidence to accept or to reject and to reconcile conflicts in the evidence. See Losada, 721 S.W.2d at 309.

In conclusion, there was sufficient evidence for the jury to resolve the issue of identity against appellant and convict him of the offense. See Ford, 509 S.W.2d at 318. The proof of guilt is not so obviously weak as to undermine confidence in the jury's determination, nor is the proof of guilt greatly outweighed by contrary proof. See Johnson, 23 S.W.3d at 11. The evidence is not factually insufficient to support the verdict. Appellant's second issue is overruled.

CONCLUSION

Having overruled both of appellant's issues, we affirm the judgment of the trial court.


Phil Johnson
Do not publish.                                    Chief Justice

15