11th
Court of Appeals

                                                                  Eastland,
Texas

                                                                        Opinion

 

 

Billy Richardson

Appellant

Vs.                   No. 11-02-00291-CR -- Appeal
from Dallas County

State of Texas

Appellee

 

The jury
convicted Billy Richardson of the offense of aggravated sexual assault of a
child under the age of 14.  The jury
then assessed punishment at confinement for 35 years and a $5,000 fine.  We affirm. 


Appellant
presents three points of error.  In the
third point of error, appellant challenges the factual sufficiency of the
evidence supporting his conviction.  In
order to determine if the evidence is factually sufficient, we must review all
of the evidence in a neutral light and determine whether the evidence
supporting guilt is so weak as to render the conviction clearly wrong and
manifestly unjust or whether the evidence supporting guilt, although adequate
when taken alone, is so greatly outweighed by the overwhelming weight of
contrary evidence as to render the conviction clearly wrong and manifestly
unjust.  Vasquez v. State, 67
S.W.3d 229, 236 (Tex.Cr.App.2002); Goodman v. State, 66 S.W.3d 283
(Tex.Cr.App.2001); Johnson v. State, 23 S.W.3d 1, 11 (Tex.Cr.App.2000); Cain
v. State, 958 S.W.2d 404 (Tex.Cr.App.1997); Clewis v. State, 922
S.W.2d 126 (Tex.Cr.App.1996).  








The record
shows that, along with others, appellant and the victim, his 13-year-old
cousin, were staying with their grandmother at the time of the offense.  The victim was visiting her grandmother for
a week.  The victim testified that she
and appellant=s sister, Brittany Scott, slept in the same
bed.  According to the victim, she woke
up one night because she felt appellant on top of her.  Appellant had moved the victim=s panties over to the side and was forcing
his private part into hers.  The victim
pushed appellant off, and he left the room. 
After unsuccessfully trying to wake Brittany up, the victim went into
the den crying.  She told a cousin and
her grandmother that appellant had Aput his hands on@ her.  The victim=s grandmother talked to appellant and
instructed the victim not to tell her mother. 


After she
returned home the next week, the victim experienced discomfort and discharge in
her vaginal area.  She told her mother
in detail what had happened.  The victim=s mother took her to the doctor, and the
victim was diagnosed with a bacterial infection that Awas sexualin nature.@  

The victim=s mother testified as an outcry witness; her
testimony was similar to the victim=s.  The victim=s mother also testified that appellant called
her and initially denied that anything had happened but then admitted that he
had committed the offense and apologized for it.  Furthermore, the State introduced appellant=s handwritten statement into evidence.  In his statement, appellant stated that he
and the victim had Avilontary
(sic) sex@ in Brittany=s room.  

Both
Brittany and the grandmother testified. 
They testified that Brittany was a light sleeper and that she would have
been awakened if appellant had gotten into the bed with her and the
victim.  The victim=s grandmother testified that the victim woke
her up and told her that appellant Atried@ to touch her and pull her underwear down but
that he did not touch her.  Appellant
told his grandmother that he did not touch the victim.  According to their grandmother, there was no
blood, semen, or any stains on the sheets where the victim had been
sleeping.  

After
reviewing all of the evidence in a neutral light, we hold that the evidence
supporting the verdict is neither too weak nor so greatly outweighed by
contrary evidence as to render the verdict clearly wrong and manifestly
unjust.  Therefore, the evidence is factually
sufficient to support appellant=s conviction.  The third point
of error is overruled.  








In the
first point, appellant contends that the trial court erred in failing to grant
his Amotion for mistrial@ after the prosecutor improperly commented
upon his failure to testify.[1]  During the State=s closing argument at the guilt/innocence
phase of trial, the prosecutor made the following argument: 

I don=t care if the Defense wants to call this [appellant=s written statement] a trump card or
not.  That makes no difference to me,
because what I=m asking you to do is to consider all the
evidence that you=ve
heard and to follow it.

 

You know,
had this statement said something else, don=t you know that the argument would have been, well, guess what?  He said he didn=t do it. 
But now the statement now that he gave, a voluntary statement, he is
admitting that he did it.  What evidence
have you heard?  What have you heard at
all from the Defense to refute or even challenge what it was that he put in his
statement? 

 

Defense counsel objected
that the State was commenting on appellant=s failure to testify.  The
prosecutor responded that she was “talking about the statement,” and the trial
court overruled the objection.  

On appeal,
the State asserts that the comment was made in response to opposing counsel=s argument and that the comment was not a
direct comment on appellant=s failure to testify.  Prior to
the State=s closing argument, defense counsel had
argued to the jury:

But they
think this is their trump card.  Any
good officer can get an idiot to say anything that they want.  You-all can take this back with you.  See how he writes “voluntary.”  How did he get the word “voluntary” in
there?  The kid can’t even spell.  His own sister told you, she can’t tell you
that he’s smart.  As much as she liked
to.  She’s under oath.  I’m sorry. 
They cannot use this as a trump card, because it didn=t happen. 


Generally,
a prosecutor may not comment upon a defendant’s failure to testify.  See Griffin v. California, 380 U.S.
609 (1965); Bustamante v. State, 48 S.W.3d 761, 765
(Tex.Cr.App.2001).  However, we hold
that the comment in this case did not violate appellant=s rights because it was made in response to
the argument of appellant=s counsel and because it could have been construed to refer to the
absence of other evidence favorable to appellant, such as testimony from the
officer who took the statement.  See
Canales v. State, 98 S.W.3d 690, 695 (Tex.Cr.App.2003)(upholding prosecutor’s
comment that referred to the defendant=s failure to explain admission he had made in a letter); see also
Madden v. State, 799 S.W.2d 683, 699 (Tex.Cr.App.1990).  The first point of error is overruled.  








In his
second point, appellant complains of a Batson[2]
error.  He contends that the State’s use
of a peremptory strike on Veniremember Miller was racially motivated.  The use of peremptory challenges to strike
potential jurors on the basis of race is prohibited.  Batson v. Kentucky, supra; TEX. CODE CRIM. PRO.
ANN. art. 35.261 (Vernon 1989).  In Purkett
v. Elem, 514 U.S. 765 (1995), the Supreme Court delineated the three-step
process for properly determining a Batson challenge.  First, the opponent of a peremptory
challenge must make out a prima facie case of racial discrimination,
essentially a burden of production.  In
the second step, the burden of production shifts to the proponent of the strike
to respond with a race-neutral explanation. 
Third, if a race-neutral explanation has been proffered, the trial court
must decide whether the opponent of the strike has proved purposeful racial
discrimination.  The burden of
persuasion is on the opponent of the strike to convince the trial court that
the strike was racially motivated.  Purkett
v. Elem, supra; Ford v. State, 1 S.W.3d 691, 693
(Tex.Cr.App.1999); Camacho v. State, 864 S.W.2d 524, 529
(Tex.Cr.App.1993), cert. den=d, 510 U.S. 1215 (1994).  

The record
shows that appellant objected that the State had struck six of the seven
eligible “African Americans within strike distance.”  The prosecutor explained all six strikes, stating in  particular that Veniremember Miller was
struck because “she was not very decisive about the one-witness rule.”  The “one-witness rule” refers to a question
by the prosecutor concerning whether the veniremembers could convict based upon
the testimony of only one eyewitness or whether they would require more than
one eyewitness.  According to the
prosecutor, Veniremember Miller vacillated enough times on this issue to
concern the State. 








In
response to the State’s explanation, defense counsel stated that, at the end of
the discussion regarding the one-witness rule, none of the veniremembers raised
their hand in response to the prosecutor’s question asking whether anyone still
had a problem with that rule.  The
record showed that the prosecutor actually asked whether anyone had any “questions”
about the rule, not a problem with it. 
On appeal, appellant points out that the State did not strike
Veniremember McCann even though she also stated that she could not follow the
one-witness rule.  The record on appeal
does not show whether Veniremember McCann was excused for cause or whether she
was too far down the list to be eligible to sit on the jury, but it does show
that Veniremember McCann did not sit as a juror in this case and that neither
the State nor appellant peremptorily struck her.  

The record
shows that, in response to the prosecutor=s question regarding the one-witness rule, Veniremember Miller
stated:  

[VENIREMEMBER
MILLER]:  There’s always two sides to
the story.  Still, you have this one
witness.  I understand the scenario that
you’re looking for, but there’s also a flip. 


 

[PROSECUTOR]:  There’s always a flip.  That’s right.  And that’s why I’m taking that flip out of my scenario, in my
hypothetical.  Can’t go there with me?

 

[VENIREMEMBER MILLER]:  No.

Veniremember Miller was
subsequently called for questioning on a one-on-one basis and asked whether she
would require more than one witness.  Her
responses varied, and she ultimately stated that she thought she could follow
the law.  

We find
that the State’s explanation was reasonable and racially neutral and that
appellant’s rebuttal did not show that the State=s race-neutral reason for striking Veniremember Miller was a pretext
for discrimination.  The use of a
peremptory strike on a veniremember based on concerns involving the one-witness
rule is justified.  Esteves v. State,
849 S.W.2d 822, 823 (Tex.Cr.App.1993); Garrett v. State, 815 S.W.2d 333,
335-36 (Tex.App. - Houston [1st Dist.] 1991, pet’n ref’d).  We hold that the trial court=s determination on the Batson issue
was not clearly erroneous.  See
Chamberlain v. State, 998 S.W.2d 230, 236 (Tex.Cr.App.1999), cert. den’d,
528 U.S. 1082 (2000); Adanandus v. State, 866 S.W.2d 210, 224-25
(Tex.Cr.App.1993), cert. den’d, 510 U.S. 1215 (1994).  The second point of error is overruled.  

The
judgment of the trial court is affirmed. 


 

W. G.
ARNOT, III

CHIEF
JUSTICE 

October 23, 2003

Do not publish.  See TEX.R.APP.P. 47.2(b). 

Panel consists of: Arnot, C.J., and 

Wright, J., and McCall, J.  











[1]The record shows that no motion for mistrial was made
but that appellant=s timely objection was overruled.  Therefore, the issue was preserved and will
be addressed on appeal despite the State=s
contention that appellant=s point of error regarding a Amotion for mistrial@
does not comport with his objection at trial. 
Both the objection and the point of error involve appellant=s contention that the State improperly commented upon
his failure to testify. 





[2]Batson v. Kentucky, 476 U.S. 79 (1986).