Opinion issued April 7, 2005















In The
Court of Appeals
For The
First District of Texas
 

 
 
NO. 01-04-00604-CR
__________
 
WILLIE LEE SMITH, JR., Appellant
 
V.
 
THE STATE OF TEXAS, Appellee
 

 
 
On Appeal from the 180th District Court
Harris County, Texas
Trial Court Cause No. 980864
 

 
 
MEMORANDUM OPINION
          A jury found appellant, Willie Lee Smith, Jr., guilty of the felony offense of
robbery, and the trial court, after finding true the allegations in two enhancement
paragraphs that appellant had two prior felony convictions, assessed his punishment
at confinement for 30 years. In four points of error, appellant contends that the trial
court erred in denying his motions for mistrial, in allowing the State to pose improper
“commitment” questions to the venire panel, and in admitting irrelevant evidence. 
We affirm.
Factual and Procedural Background
          The complainant testified that, as he was walking home from a convenience
store, appellant, who was across the street, said to him two times, “Give me your
money.” The complainant, who was 10 years old, attempted to run away, but then
dropped some of the change he was carrying. When the complainant bent down to
retrieve his change, appellant ran towards him, caught him, and grabbed him tightly. 
Because he was afraid that appellant was going to “hurt” him, “steal” him, and “rape”
him, the complainant swung at the appellant and pulled away from him. The
complainant then ran to his home, entered the gate to his yard and called for his
parents. Appellant followed the complainant inside the gate, but left the scene after
the complainant’s parents came out of the house, yelled at appellant, and pushed
appellant. The complainant’s mother called for emergency assistance.
          Houston Police Officer A. Carroll testified that, when he arrived at the scene,
a group of people, including the complainant’s mother, described appellant and
informed Carroll of the direction in which appellant had left the scene. Carroll
looked for and immediately found appellant, who matched the description given to
him, a few blocks away. Appellant was sweating and out of breath. Carroll placed
appellant in the back of his patrol car and drove appellant back to the scene. The
complainant’s mother and the complainant identified appellant as the assailant. 
Carroll then met with the complainant, who was “very scared” and “traumatized.” 
The complainant told Carroll that appellant had approached him, told him to give him
his money, and grabbed him.  
Motions for Mistrial
          In his first point of error, appellant contends that the trial court erred in denying
his motions for mistrial following the State’s improper comments during voir dire. 
Appellant complains of the following comments:
          [State]:                             The defendant also has the right, regardless of
the evidence against him, to a trial. If he
wants a trial, he gets a trial. If he wants to
force the victim to take the stand against
him—
 
          [Defense Counsel]:          Again, I’m going to object to that. Your
Honor.
 
          [Trial Court]:                   Sustained as to the form of the question.
 
          [Defense Counsel]:          I ask the jury to be instructed to disregard it.
 
          [Trial Court]:                   Disregard that.
 
          [Defense Counsel]:          I move for a mistrial.
 
          [Trial Court]:                   It is denied.
 
          [State]:                             The defendant has the right to a trial. The
defendant can force him to take the stand
against him. That’s his right.
 
          [Defense Counsel]:          Again, I would object to that. Your Honor.
 
          [Trial Court]:                   Sustained.
 
          [Defense Counsel]:          Constitution says—
 
          [Trial Court]:                   I sustain your objection.
 
          [Defense Counsel]:          Again, I ask the jury to be instructed to
disregard.
 
          [Trial Court]:                   The jury will disregard the last remark.
 
          [Defense Counsel]:          Again, I move for a mistrial.
 
          [Trial Court]:                   It’s denied.
          We review the trial court’s denial of appellant’s motions for mistrial for an
abuse of discretion. Ladd v. State, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999);
Woodall v. State, 77 S.W.3d 388, 399 (Tex. App.—Fort Worth 2002, pet. ref’d). A
trial court may declare a mistrial when an error occurs that is so prejudicial that the
expenditure of further time and expense would be wasteful. Wood v. State, 18
S.W.3d 642, 648 (Tex. Crim. App. 2000). Whether a trial court abused its discretion
in denying a motion for mistrial depends on whether the court’s instruction cured any
prejudicial effect. Dinkins v. State, 894 S.W.2d 330, 357 (Tex. Crim. App. 1995);
Faulkner v. State, 940 S.W.2d 308, 312 (Tex. App.—Fort Worth 1997, pet. ref’d). 
Generally, an instruction to disregard cures the prejudicial effect. Dinkins, 894
S.W.2d at 357; Woodall, 77 S.W.3d at 399. However, a comment may be so
egregious or inflammatory as to render the instruction ineffective in curing the
prejudice. Dinkins, 894 S.W.2d at 357; Woodall, 77 S.W.3d at 399. 
          Appellant cites Villareal v. State, 860 S.W.2d 647, 649 (Tex. App.—Waco
1993, no pet.), in support of his contention that the prejudicial effect of the State’s
comments was incurable and that the court’s instructions to disregard were ineffective
to cure such prejudice. In Villareal, during the closing argument in the punishment
phase of trial, the State made the following argument: “This man made a conscious
decision to rape a ten-year-old child. But he didn’t do it just once. He forced her to
have to come into this courtroom in front of a bunch of strangers. . . .” Id. at 649. 
The trial court sustained defense counsel’s objection and instructed the jury to
disregard the argument but denied his motion for mistrial. Id. The court of appeals
held that the trial court erred in denying the motion for mistrial and remanded the case
for a new trial on punishment. Id. at 649-50. 
          The argument made in Villareal and the comments made by the State in this
case are not comparable. First, Villareal involved comments made by a prosecutor
at the conclusion of his jury argument during the punishment phase of the trial. Id. 
An improper comment made during voir dire generally has less impact than similar
comments made during jury argument. See Jackson v. State, 726 S.W.2d 217, 221
(Tex. App.—Dallas 1987, pet. ref’d) (noting that improper statement made during
final argument, which is last thing jury hears before it retires to deliberate, “has a
greater impact on the jury than the same statement made during voir dire when much
time still remains before deliberations”). Here, the prejudicial effect of the State’s
comments, if any, was minimized because they were made during voir dire. 
          Second, the force of the State’s argument in Villareal was much stronger than
the force of the comments made by the State in this case. In Villareal, the court found
that the State’s argument—that by compelling the victim to take the stand, the victim
was again being “raped” by the defendant—was “extreme and manifestly improper
and thus so inflammatory that its prejudicial effect could not be reasonably removed
from the minds of the jurors by the instruction given.” Id. at 649. In this case, the
State was not asking the jury to punish appellant for exercising his right to a jury trial
and his right to confront the witnesses, including the complainant, who were
testifying against him. In fact, after the State made the comments, the State told the
jury that appellant had the right to confront his witnesses, as guaranteed by the
Constitution, and appellant did not object to these additional comments. Moreover,
the trial court told the jury during voir dire that the appellant had a right to cross-examine and subpoena witnesses and a right to a jury trial. Thus, the effect and force
of the arguments made in Villareal are more significant than the effect and force of
the comments made by the State in this case. 
          We conclude that the State’s comments made during voir dire were not so
extreme or inflammatory as to render the trial court’s instructions to disregard
ineffective, and any possible prejudice was cured by the instructions to disregard. We
hold that the trial court did not abuse its discretion in denying appellant’s motions for
mistrial.
          We overrule appellant’s first point of error.
Improper Commitment Questions
          In his second and third points of error, appellant contends that the trial court
erred in allowing the State, over his objections, to pose improper commitment
questions to the venire panel. The trial court overruled appellant’s objections to the
following three questions posed by the State:
          (1)     The law doesn’t require that I prove to you that somebody
actually took something to commit theft. I can prove to you by
showing you evidence that that is what they planned. And how
do you prove that they planned to take something or that is what
they wanted? How can I prove that, Juror No. 3?
 
          (2)     But let’s say they don’t run off with it and I still want to prove to
you that what they had in their mind was that they wanted to
commit theft. How could I do that?
 
          (3)     Hypothetically, if a child were involved in a case, would anybody
here have a hard time listening to a child witness on a case?




          Appellant contends that these questions constituted improper commitment
questions. See Standefer v. State, 59 S.W.3d 177, 181 (Tex. Crim. App. 2001). 
Appellant argues that the first two questions asked the jury to “set the parameters for
their decision making” and that the third question asked the jury how it would
“respond to a child witness who was ten years old and the complainant.”



          Questions during voir dire are proper if they seek to discover a juror’s views
on an issue applicable to the case. Smith v. State, 703 S.W.2d 641, 643 (Tex. Crim.
App. 1985). Voir dire examination permits the parties to assess the desirability of
prospective jurors and to select a “competent, fair, impartial, and unprejudiced jury
. . . .” Staley v. State, 887 S.W.2d 885, 896-97 (Tex. Crim. App. 1994). Because a
trial court has broad discretion over the process of selecting a jury, an appellate court
should not disturb a trial court’s ruling on the propriety of a particular question during
voir dire absent an abuse of discretion. Barajas v. State, 93 S.W.3d 36, 38 (Tex.
Crim. App. 2002). 
          However, an attorney may not “attempt to bind or commit a prospective juror
to a verdict based on a hypothetical set of facts.” Lydia v. State, 109 S.W.3d 495, 497
(Tex. Crim. App. 2003) (citing Allridge v. State, 850 S.W.2d 471, 480 (Tex. Crim.
App. 1991)). “Questions that commit prospective jurors to a position, using a
hypothetical or otherwise, are improper and serve no other purposes other than to
commit the jury to a specific set of facts before the presentation of any evidence at
trial.” Lydia, 109 S.W.3d at 497.
          The test for determining when a voir dire question calls for an improper
commitment has two steps: “(1) Is the question a commitment question, and (2) Does
the question include only those facts that lead to a valid challenge for cause?” Id.
(emphasis added). If the answer to the first question is “yes” and the answer to the
second question is “no,” then the question asked is an improper commitment
question. Id. at 497-98. Commitment questions commit a prospective juror to
resolve, or to refrain from resolving, an issue a certain way after learning a particular
fact. Id. (quoting Standefer, 59 S.W.3d at 179). While these types of questions “tend
to require a ‘yes’ or ‘no’ answer,” they may also be open-ended and ask a prospective
juror to “set the hypothetical parameters for his or her own decision-making.” Id. 
Additionally, commitment questions may contain words such as “consider,” “would,”
and “could.” Id.
          Not all questions that require a commitment are improper. For example, when
the law requires certain types of commitments from jurors, attorneys may ask the
prospective jurors whether they can follow the law in that regard. However, a 
commitment question is improper when “(1) the law does not require a commitment
or (2) when the question adds facts beyond those necessary to establish a challenge
for cause.” Id. 
          With respect to the first two questions posed by the State, appellant argues that
the State requested the prospective jurors to devise a set of facts and speculate
regarding whether that set of facts would prove an intent to commit theft. In contrast,
the State argues that the questions merely solicited the jurors’ thoughts on what types
of evidence the jurors would expect to see to prove the issue of intent and did not ask
the jurors to commit to a finding of intent if certain evidence was presented. With
respect to the third question, appellant argues that it was improper to ask the jurors
if they would have a hard time listening to the child witness. The State counters that
this question, like the first two, did not commit a prospective juror to resolve, or to
refrain from resolving, an issue in a certain away. 
          We conclude that the first two questions were commitment questions. See
Lydia, 109 S.W.3d at 499; Standefer, 59 S.W.3d at 183. These questions asked the
jurors to discuss the type of evidence that would be necessary for the State to prove
intent to commit theft under certain circumstances, and thus the questions asked the
jurors to define the parameters of their decision making. See Lydia, 109 S.W.3d at
499 (holding question “what kind of conviction would cause you to have a bias”
asked the jurors to define crimes that would make a difference in their assessment of
a witness’s credibility and thus asked jurors to define the parameters of their decision
making). However, we conclude that the third question was not a commitment
question because it did not seek to commit the jurors to resolve, or to refrain from
resolving, an issue a certain way after learning a particular fact. More specifically,
it did not ask the jurors to “resolve the credibility of a witness based on a particular
fact about that witness.” Compare Lydia, 109 S.W.3d at 499 (finding question asking
jurors “Do each of you feel as though you could evaluate a witness and his testimony
and decide if he is being truthful without automatically dismissing his testimony
because of some criminal history” was a commitment question). The third question
merely asked the jurors if they could listen to a child witness. 
          Because the first two questions constitute commitment questions, we must now
determine whether these questions included only those facts that would lead to a valid
challenge for cause. Standefer, 59 S.W.3d at 182. A review of the record reveals that
the first two questions were posed during a series of questions by the State asking the
jurors if they could follow the law and find that a person intended to commit theft
even if he did not ultimately take anything from the victim. These questions, which
were open-ended, provided an opportunity for a prospective juror to answer that, in
his opinion, the intent to commit theft could only be established by showing that a
person actually took property from a victim or used force in an attempt to take such
property. It is apparent that the State was seeking to determine if any of the
prospective jurors’ parameters for decision-making did not comply with the law, that
is, whether any of the prospective jurors could not base a guilty verdict on evidence
establishing a robbery “by threats.” Thus, these questions gave rise to a valid
challenge for cause. See Atkins v. State, 951 S.W.2d 787, 789-90 (Tex. Crim. App.
1997) (noting that State could have permissibly inquired as to whether prospective
jurors could follow law that says person may be found guilty of possession even if
possession involved only a residue amount). We further conclude that these
questions do not add facts beyond those necessary for a challenge for cause. 
          Accordingly, we overrule appellant’s second and third points of error.
Irrelevant Testimony
          In his fourth point of error, appellant contends that the trial court erred in
admitting the testimony of the complainant’s mother at the guilt phase of trial
concerning the effect that the incident had on the complainant and his family. 
Appellant argues that this testimony was irrelevant and was calculated to inflame the
minds of the jurors against appellant.
          During the State’s direct examination of the complainant’s mother, the mother
testified, without objection, that the family had moved from their house after the
incident. The State then asked the mother if the incident was the reason the family 
moved. The trial court overruled appellant’s relevance objection to this question, and
the mother testified that the incident was the reason the family moved. The mother
further testified that they moved because the complainant was “scared.” 
          Relevant evidence is evidence having “any tendency to make the existence of
any fact that is of consequence to the determination of the action more probable or
less probable than it would be without the evidence.” Tex. R. Evid. 401 (Vernon
2004). Evidence concerning the after-effects of a crime is relevant during the guilt
phase of a trial when it is relevant to a contested issue, such as consent or whether the
offense was even committed. See Brown v. State, 757 S.W.2d 739, 740 (Tex. Crim.
App. 1988) (stating that if consent is contested issue in rape case, evidence of after-effects of rape would be admissible); Yatalese v. State, 991 S.W.2d 509, 511 (Tex.
App.—Houston [1st Dist.] 1999, pet. ref’d) (holding testimony regarding change in
victim’s behavior after sexual assault relevant because it tended to prove assault
occurred, where defense was that no assault occurred).
          Appellant cites Garrett v. State, 815 S.W.2d 333, 337 (Tex. App.—Houston
[1st Dist.] 1991, pet. ref’d), in support of his argument that the mother’s testimony
about why the family moved was irrelevant. In Garrett, this Court held that evidence
of the “after effects of the crime” could not be admitted during the guilt phase of the
trial. Id. at 338. However, the defendant in Garrett contested that the complainant
had misidentified him, not that the offense had not been committed. Id. at 338. Here,
because appellant is disputing the commission of the offense, Garrett is substantively
distinguishable from this case. 
          Here, the mother’s testimony was relevant to show that the appellant placed the
complainant in fear, which was essential to proving that appellant was guilty of the
charged offense. Tex. Pen. Code Ann. § 29.02 (Vernon 2003). Appellant contested
whether the offense was committed, and specifically, whether he took actions that
allegedly placed the complainant in fear. Thus, we hold that the mother’s testimony
that the family moved from their house because the complainant was “scared” was
relevant.
          Accordingly, we overrule appellant’s fourth point of error.
                                                         Conclusion
          We affirm the judgment of the trial court.
 
 
                                                                        Terry Jennings
                                                                        Justice 
Panel consists of Justices Nuchia, Jennings, and Alcala.
Do not publish. Tex. R. App. P. 47.2(b).