Robert Lee ALLEN, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–90–00526–CR.

Court of Appeals of Texas, Dallas.

June 11, 1991.

---

1. The trial court believed that the bailiff was an adequate interpreter because he said so.

Lawrence B. Mitchell, Dallas, for appellant.

Jeffrey B. Keck, Dallas, for appellee.

Before STEWART, THOMAS and MALONEY, JJ.

OPINION ON REHEARING

THOMAS, Justice.

Robert Lee Allen's motion for rehearing is granted. This Court's opinion of May 8,

1991 is withdrawn, and the judgment of that date is vacated. The following is now our opinion.

Robert Lee Allen appeals his conviction for aggravated robbery. After returning a guilty verdict and finding the enhancement allegations to be true, the jury sentenced Allen to confinement for life. In three points of error, Allen generally contends that the trial court erred by: (a) overruling his *Batson* objections regarding two of the prosecution's peremptory strikes; and (b) failing to dismiss the array and call a new panel of prospective jurors after finding that the prosecution had exercised two of its peremptory strikes in a racially discriminatory fashion. We overrule the points and affirm the trial court's judgment.

### *BATSON* CHALLENGES

■ In the first two points, Allen contends that the trial court erred in overruling his objections to the prosecutor's use of peremptory challenges to exclude from the jury members of Allen's race in violation of *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). In order to invoke the protection of *Batson*, a defendant must raise an inference of purposeful discrimination, and the trial court must determine that a prima facie case of discrimination exists by virtue of the State's use of its peremptory challenges. A defendant may establish a prima facie case of discrimination by showing:

1. that he is a member of a cognizable racial group;

2. that the prosecutor has exercised peremptory challenges to remove members of the defendant's race from the venire; and

3. that these facts and any other relevant circumstances raise an inference that the prosecutor used peremptory challenges to exclude the veniremembers on account of their race.

*Batson*, 476 U.S. at 96, 106 S.Ct. at 1722; *Keeton v. State*, 724 S.W.2d 58, 65 (Tex. Crim.App.1987); *C__E__J__ v. State*, 788

S.W.2d 849, 853 (Tex.App.—Dallas 1990, writ denied); *see also* TEX.CODE CRIM.PROC. ANN. art. 35.261(a) (Vernon 1989).[1] When a defendant establishes a prima facie case, the burden shifts to the State to come forward with racially neutral explanations as to why it exercised peremptory challenges against veniremembers of the same cognizable racial group as the defendant. *Batson*, 476 U.S. at 97, 106 S.Ct. at 1723; *Keeton*, 724 S.W.2d at 65. The trial judge must then examine each of the prosecutor's reasons for striking a potential juror within the circumstances of the particular case to determine whether the neutral explanation for the strike is really a pretext for a racially motivated peremptory challenge. In making this determination, the trial judge must ascertain whether the prosecutor has articulated a "clear and reasonably specific" explanation of "legitimate reasons" for striking the veniremember. *See Batson*, 476 U.S. at 98, 106 S.Ct. at 1723; *C__E__J__*, 788 S.W.2d at 855. The trial court's determination that the prosecution has rebutted the prima facie case will not be reversed on appeal unless it is clearly erroneous. *Whitsey v. State*, 796 S.W.2d 707, 727 (Tex.Crim.App.1989) (on rehearing).

### A. *Veniremember Hutchinson*

■ In the first point, Allen contends that the trial court erred in finding that the striking of veniremember Hutchinson was not racially motivated. The statement of facts shows that Hutchinson is a black woman, that she is married to an inspector, and that her father had been arrested five years before the trial. The prosecutor stated that he struck this veniremember because: (1) she failed to fully complete her juror information card in that she left out her husband's occupation and employer; (2) it was apparent throughout the voir dire that she had a disdain for the prosecutor in that she continuously stared at him and gave him an uncomfortable feeling; and (3) her father had been arrested five years before this trial and had thus been involved

1. We recognize that the U.S. Supreme Court's decision in *Powers v. Ohio* has changed the requirements for establishing a prima facie case. Those changes, however, are not relevant to this appeal. *See Powers v. Ohio*, —— U.S. ——, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991).

in the criminal justice system. In response, Allen's counsel pointed out that several other veniremembers who failed to completely fill out their juror information cards had not been struck by the prosecutor and that Hutchinson had continuously stared at the defense counsel as well. The prosecutor replied by pointing out that the other veniremembers who had failed to list their spouse's occupation and employer were single, thus having no spouse whose occupation and employer they could list. The trial court found that the prosecutor's reasons justified his striking veniremember Hutchinson.

 The failure of a veniremember to complete his juror information card has been found sufficient, when combined with other factors, to rebut a prima facie *Batson* case. *See Dennis v. State*, 772 S.W.2d 525, 526–27 (Tex.App.—Beaumont 1989), *pet. dism'd per curiam*, 798 S.W.2d 573 (Tex.Crim.App.1990). Likewise, the fact that a veniremember's family members have been arrested, when combined with other factors, has been found sufficient to rebut a prima facie *Batson* case. *See Munson v. State*, 774 S.W.2d 778, 779–80 (Tex.App.—El Paso 1989, no pet.). Finally, although the appellate courts closely scrutinize explanations of peremptory strikes based on the nonverbal behavior of the veniremember, *see, e.g., Smith v. State*, 790 S.W.2d 794, 795–96 (Tex.App.—Beaumont 1990, no pet.), the nonverbal conduct of the veniremember, when combined with objective nonracial reasons for striking the veniremember, can be sufficient to rebut a prima facie *Batson* case. *Branch v. State*, 774 S.W.2d 781, 784 (Tex.App.—El Paso 1989, pet. ref'd). While the prosecutor did not strike all veniremembers who failed to complete their juror information cards, the prosecutor's other reasons for striking her, when combined with her failure to complete the card, is adequate to compensate for any inconsistency in the prosecutor's reasons. We hold that, under these facts, the trial court was not clearly erroneous in finding that the prosecutor's striking of

veniremember Hutchinson was not racially motivated. The first point is overruled.

### B. Veniremember McDade

 In the second point, Allen contends that the trial court erred in finding that the prosecution's striking of veniremember McDade was not racially motivated. The statement of facts shows that McDade was raised in McClendon County, that he had not served in the military, and that he had never been arrested but that his son had received traffic tickets. He also indicated that he had no trouble with the range of punishment for aggravated robbery. During the *Batson* hearing, the prosecutor stated that he struck McDade because: (1) he did not fill out his juror information card completely, which indicated that he had difficulty writing; (2) he was originally from McClendon County, not Dallas County; (3) he had never served in the military; and (4) his son had been arrested and thus had been involved closely with law enforcement, which led the prosecutor to believe he would not be fair to the State.[2] Allen's attorney criticized the prosecutor's reasons for striking McDade because: (1) the fact that he left four blanks on his juror information card was not sufficient grounds for a peremptory strike; and (2) the prosecutor failed to strike other veniremembers who also had no military service. Allen's trial counsel did not dispute the prosecutor's allegations that McDade was not from Dallas County and that his son had been arrested. The trial court ruled that the prosecution had rebutted Allen's prima facie *Batson* case.

 This Court has stated that the prosecution may legitimately strike a veniremember because of low intelligence. *See Chivers v. State*, 796 S.W.2d 539, 542 (Tex.App.—Dallas 1990, pet. ref'd). However, the veniremember's low intelligence level must be inferable from the record. *Chivers*, 796 S.W.2d at 542. Peremptory strikes based in part on the low intelligence

---

**2.** When McDade was asked whether he or any of his family members had ever been arrested, he said, "No more than my son's tickets is all."

The record contains no other indication that his son had ever been placed under custodial arrest.

of the veniremember have been upheld where the veniremember made errors in filling out the juror information card. *Hastings v. State*, 755 S.W.2d 183, 186 (Tex. App.—San Antonio 1988, pet. ref'd); *Rice v. State*, 746 S.W.2d 356, 357 (Tex.App.—Fort Worth 1988, pet. ref'd). Like low intelligence, the inability of a veniremember to write is a legitimate, racially neutral ground for striking the veniremember. During the *Batson* hearing, the prosecutor stated that it was "[v]ery obvious by looking at the way that the juror filled out the card, that he has a problem with writing." McDade stated on the card that he was married, but he did not fill in his wife's occupation. According to Allen's trial counsel, McDade left four blanks on the juror information card unanswered. This could be sufficient by itself to warrant striking McDade for lack of intelligence or inability to write. *See Hastings*, 755 S.W.2d at 186; *Rice*, 746 S.W.2d at 357. We have examined McDade's juror information card, and it does appear to us that the prosecutor's argument that McDade has difficulty writing is well founded. Based upon the record, we cannot conclude that the trial judge was clearly erroneous in finding that the prosecutor's striking of veniremember McDade was not racially motivated. The second point is overruled.

### COURT'S FAILURE TO FOLLOW ARTICLE 35.261

■ In the third point, Allen contends that the trial court erred by not dismissing the jury and summoning a new array after finding that two of the prosecutor's peremptory strikes had been racially motivated. When Allen's trial counsel finished making his prima facie *Batson* case, he asked the court "that this jury be quashed." After the prosecution attempted to rebut the prima facie case, the trial judge found that the prosecutor had rebutted Allen's prima facie *Batson* case as to four of the peremptory strikes, but that he had failed to rebut the prima facie case as to two of the strikes. The judge then asked the attorneys what he should do, and Allen's trial counsel told the judge to remove the last two jurors and place the improperly struck veniremembers on the jury in their places,[3] which the trial court did. On appeal, Allen contends that the trial court erred by not following the mandate of article 35.261 of the Code of Criminal Procedure, which states: "If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court *shall* call a new array in the case." TEX.CODE CRIM.PROC. ANN. art. 35.261(b) (Vernon 1989) (emphasis added). Allen maintains that since his counsel asked the court to quash the jury panel and since the court did not do so even though required to do so by article 35.261, the court committed reversible error because the statute is phrased in mandatory terms.[4]

The Texarkana Court of Appeals confronted a nearly identical situation in *Sims v. State*, 768 S.W.2d 863 (Tex.App.—Texarkana 1989), *pet. dism'd per curiam*, 792 S.W.2d 81 (Tex.Crim.App.1990). When the trial court in that case found that the prosecutor failed to demonstrate racially neutral reasons for striking a particular veniremember, Sims moved that the strike be disallowed or, in the alternative, that the panel be quashed. When the trial court disallowed the strike, Sims did not object

---

3. At the end of the *Batson* hearing, the following discussion occurred:

 THE COURT: Okay. The [c]ourt finds State's strikes No. 6, No. 11, [No. 33], [No. 35] are justified. Finds insufficient cause to strike No. 2 and No. 9. Now, where do we go from there?
 [DEFENSE COUNSEL]: We start counting. Pick out the first twelve if they're back on the panel.
 THE COURT: Okay. The last two that came off, they came on the jury, come off. Those two go back on, right?

 [DEFENSE COUNSEL]: Yes, sir.

4. In response, the State asks us to find that article 35.261 is violative of both the Texas and the United States Constitutions. The constitutionality of a statute will not be determined in any case unless such a determination is absolutely necessary to decide the case. *Smith v. State*, 658 S.W.2d 172, 174 (Tex.Crim.App.1983); *Schin v. State*, 744 S.W.2d 370, 371 (Tex.App.—Dallas 1988, pet. ref'd). As we hold that Allen's rights under the statute were not violated, the constitutional question is moot.

and did not insist that a new array be summoned. The Texarkana court held that, since Sims received all the relief he requested and did not object, no error was shown. *Sims,* 768 S.W.2d at 865. We find the Texarkana court's reasoning persuasive. Like Sims, Allen received all the relief he requested. Allen never objected to the trial court's failure to dismiss the jury and summon a new array; indeed, he never even suggested to the trial court that article 35.261 controlled this situation. Any error by the trial court in not following article 35.261 is not preserved for our review. As the relief Allen requested and received is consistent with *Batson, see Henry v. State,* 729 S.W.2d 732, 737 (Tex. Crim.App.1987) (listing disallowance of peremptory strike as an acceptable remedy for a *Batson* violation), Allen's rights under the equal protection clause of the Fourteenth Amendment to the U.S. Constitution have not been violated. The third point is overruled, and the trial court's judgment is affirmed.