Rodney Dewayne JOHNSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–93–0174–CR.

Court of Appeals of Texas, Amarillo.

June 15, 1994.

W. Clay Abbott, Lubbock, for appellant.

Robert W. Kinkaid, Jr., Asst. Dist. Atty., Plainview, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

BOYD, Justice.

Upon a plea of guilty, appellant Rodney Dewayne Johnson was convicted of the offense of burglary, a first degree felony,[1] and the jury assessed punishment at thirty (30) years confinement in the Texas Department of Criminal Justice, Institutional Division. He now challenges both his conviction and sentence in one point of error, therein arguing that the trial court reversibly erred in denying his motion for mistrial based upon the State's alleged racially discriminatory use of its peremptory strikes in selecting a jury for the punishment phase of appellant's trial. For reasons hereinafter expressed, we overrule appellant's point and affirm the judgment of the trial court.

During its voir dire examination of the jury panel, the State asked a series of general questions and, after hearing the responses, questioned only two veniremen individually. After the jury had been selected but prior to the dismissal of the jury panel, defense counsel moved for a mistrial, claiming the State had violated the prohibition against the use of peremptory strikes in a racially discrimi-

natory manner as explicated in *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986). He based his motion on the fact that there were no veniremen from any racial minority selected to serve on the jury. In support of his motion, he identified seven potential Hispanic or African–American veniremen who were peremptorily struck by the State. After a hearing, the trial court overruled the motion.

During the hearing, the prosecutor tendered the following as racially neutral explanations for striking the veniremen in question:

1. Juror[2] number 5, Eloy Felan, Jr., had a son who had been prosecuted for an offense.

2. Juror number 11, Teresa Landeros, was shaking and nodding her head regarding the possibility of appellant's probation and such actions indicated a bias "toward" the State.

3. Juror number 16, Joe Castillo, had been the subject of a prior prosecution.

4. Juror number 20, Diann Pitts (an African–American), was reported to have "had numerous calls of domestic disturbances as well as various other criminal charges" that occurred at her address. She was excused as a result of this involvement with law enforcement.

5. Juror number 6, Marcos Hernandez, did not turn in his jury card and this failure to follow directions indicated that he "would show ... disrespect."

6. Juror number 19, Rickey Rojas, had a family member that had been prosecuted by the State's prosecutor.

7. Juror number 25, Baleriano Cuevas, had been nodding her head in agreement to defense counsel's questions.

After the State offered these explanations, defense counsel elicited an admission from the prosecutor that the State had exercised

---

1. As the burglary was of a habitation and included the use of a deadly weapon, the offense was elevated to a first degree felony.

2. A venireman is not actually a "juror" until he or she has been chosen as a member of the jury;

however, because the trial court identifies the members of the venire by juror number, the veniremen will be referred to as jurors, even though they may not have been selected to sit on the jury.

only eight[3] peremptory strikes and that appellant had complained of the use of each of the strikes. The prosecutor stated, however, that he had no objection to seating jurors 16, Castillo,[4] and 25, Cuevas,[5] on the jury. The following dialogue between the trial judge and defense counsel then ensued:

THE COURT: Do you have any further objections?

MR. ABBOTT: No, Your Honor. I know that there has been a tendency not to replace jurors, but I will leave that to the discretion of the Court.

THE COURT: I haven't sworn the jury in, so I will just recall the list and reseat them.

Okay. Anything else?

MR. ABBOTT: No, Your Honor—well, yes. Even with the reseating, I would reurge my motion.

THE COURT: The record will show that I overrule your motion, and I will seat number 16 and number 25 as jurors. Will there be anything further, now, before this panel gets here?

MR. ABBOTT: No, sir.

### THE BATSON VIOLATION

It is well established that the State cannot peremptorily challenge a potential juror solely on account of that person's race. The deliberate or purposeful denial of jury participation to citizens because of race violates an accused's rights under the Equal Protection Clause of the United States Constitution. *Smith v. State,* 814 S.W.2d 858, 860 (Tex. App.—Amarillo 1991, no pet.) (quoting *Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991); *Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986)). The prohibition against exclusion of persons from the jury because of their race is now codified in Article 35.261 of the Texas Code of Criminal Procedure.[6]

To establish a prima facie case under Article 35.261, the accused must show purposeful discrimination by establishing that:

(1) he or she is a member of a cognizable racial group;

(2) the State exercised its peremptory challenges to eliminate, from the venire, members of the accused's race; and

(3) the facts and other pertinent occurrences raise an inference that the State used peremptory strikes to exclude venire persons on account of race.

*Henry v. State,* 729 S.W.2d 732, 734 (Tex. Crim.App.1987).

■■■ In this case, by requiring the prosecutor to explain why he exercised his peremptory strikes to exclude Hispanic and African–American veniremen, the trial court implicitly found that appellant made a prima facie showing of purposeful discrimination. *Miller–El v. State,* 790 S.W.2d 351, 354 (Tex. App.—Dallas 1990, pet. ref'd). Neither party challenges that implicit finding and the rec-

3. Although defense counsel here complains of the use of eight strikes, specific objections were raised and addressed to only seven jurors.

4. The prosecutor erroneously believed that juror 16 had been prosecuted for an offense by the associate prosecutor. Upon the discovery of this error, the prosecutor withdrew his objection to this juror.

5. The prosecutor retracted his objection to juror 25 sitting on the panel, but continued to express his dislike of her appearance and physical reactions in court.

6. Tex.Code Crim.Proc.Ann. art. 35.261 (Vernon 1989) provides:

(a) After the parties have delivered their lists to the clerk under Article 35.26 of this code and before the court has impanelled the jury, the defendant may request the court to dismiss the array and call a new array in the case. The court shall grant the motion of a defendant for dismissal of the array if the court determines that the defendant is a member of an identifiable racial group, that the attorney representing the state exercised peremptory challenges for the purpose of excluding persons from the jury on the basis of their race, and that the defendant has offered evidence of relevant facts that tend to show that challenges made by the attorney representing the state were made for reasons based on race. If the defendant establishes a prima facie case, the burden then shifts to the attorney representing the state to give a racially neutral explanation for the challenges. The burden of persuasion remains with the defendant to establish purposeful discrimination.

(b) If the court determines that the attorney representing the state challenged prospective jurors on the basis of race, the court shall call a new array in the case.

ord supports it. Appellant is an African–American and, thus, a member of a cognizable racial group. According to statements made by defense counsel and acceded to by the State, the prosecutor exercised his peremptory challenges to remove Hispanic and/or African–American veniremen. When the jury was seated, there were no minorities sitting in the jury box.[7] That being true, we must review the trial court's post hearing determination that the State did not strike five of the veniremen (jurors 5, 6, 19, 20, and 28) on the basis of race.

Once the defendant makes a prima facie showing of purposeful discrimination, the burden shifts to the State to come forward with a neutral explanation for peremptorily challenging minority jurors. The prosecutor must give "clear and reasonably specific explanations of legitimate reasons" for striking the jurors. *Whitsey v. State,* 796 S.W.2d 707, 713 (Tex.Crim.App.1989) (quoting *Batson,* 476 U.S. at 94–97 and n. 20, 106 S.Ct. at 1722–24 and n. 20). The trial judge must evaluate these explanations in light of the circumstances of the trial to determine whether such reasons are merely a pretext. *Id.* at 713.

The standard by which an appellate court must review a trial court's determination that a prosecutor exercised his strikes in a sufficiently race neutral manner is the "clearly erroneous" test enunciated in *Whitsey. Id.* at 721. In its opinion on a motion for rehearing, the Texas Court of Criminal Appeals relied upon, and cited with approval, the explanation of that test as set forth by the United States Supreme Court in *Anderson v. Bessemer City,* 470 U.S. 564, 105 S.Ct. 1504,

84 L.Ed.2d 518 (1985). *Id.* at 721–22. In *Anderson,* the Court explained that:

> [a] finding is "clearly erroneous" when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. (citation omitted). This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently.

*Anderson,* 470 U.S. at 573, 105 S.Ct. at 1511.

Applying the clearly erroneous test, we find that the trial court did not err in its determination that the prosecutor offered racially neutral and objectively verifiable explanations for striking jurors 5, 6, 19, 20, and 28. In the course of the hearing on the motion, appellant made no attempt to cross-examine the prosecuting attorney, nor did he offer any evidence of his own. Additionally, he did not elicit any information from the prosecutor regarding disparate treatment, lack of meaningful questioning, or group bias.[8] He also failed to attempt to introduce the jury strike lists or any relevant statistical information into evidence. Rather than attack the explanations offered by the prosecutor, it appears that appellant regarded the burden of proof as residing entirely with the State. Such an assumption, however, was incorrect.

In this, as in any equal protection case, the burden of production, as well as persuasion, remains with the party who is asserting that the prosecutor engaged in a discriminatory process when selecting the jury. The complaining party must prove the

---

**7.** It is not necessary that the excluded veniremen be of the same race as the accused. *See Powers v. Ohio,* 499 U.S. 400, 111 S.Ct. 1364, 113 L.Ed.2d 411 (1991). To bar a defendant's claim simply because "his race differs from that of the excluded jurors would be to condone the arbitrary exclusion of citizens from the duty, honor and privilege of jury service." *Id.* at 415, 111 S.Ct. at 1373.

**8.** Defense counsel could have demonstrated that certain pretext factors, such as those outlined by this court in *Smith v. State,* 814 S.W.2d at 860, were present. Those factors include:
  1. the reason given for the peremptory challenge is not related to the facts of the case;

  2. there was a lack of questioning to the challenged juror or a lack of meaningful questions;
  3. disparate treatment, *i.e.,* persons with the same or similar characteristics as the challenged juror were not struck;
  4. disparate examination of members of the venire, *i.e.,* questioning a challenged juror so as to evoke a certain response without asking the same question of other panel members; and
  5. an explanation based on a group bias where the group trait is not shown to apply to the challenged juror specifically.

existence of purposeful discrimination. *Williams v. State,* 804 S.W.2d 95, 97 (Tex. Crim.App.1991), *cert. denied,* 501 U.S. 1239, 111 S.Ct. 2875, 115 L.Ed.2d 1038 (1991) (quoting *Whitus v. Georgia,* 385 U.S. 545, 87 S.Ct. 643, 17 L.Ed.2d 599 (1967)). In Texas, Article 35.261 explicitly states that the burden of persuasion remains with the defendant to establish purposeful discrimination. In this case, as the prosecutor's racially neutral explanations for striking the five jurors were not disproved by the appellant, the trial court did not err in deeming them "satisfactory."

Defense counsel objected to the prosecution's exclusion of seven veniremen. The trial court found the explanations given by the State for excluding five of the veniremen, jurors 5, 6, 19, 20 and 28, to be satisfactory. This determination is not clearly erroneous and we will not disturb it.

The natural implication of the trial court ruling that five of the jurors were legitimately excluded is that the other veniremen in question were not. However, the other two veniremen, juror 16 (Castillo) and juror 25 (Cuevas), were seated on the jury after the State's initial objection and actually served during appellant's trial. This is an implicit finding that the State prosecutor challenged the two prospective jurors on the basis of race.

■ Noting that fact, appellant argues that the trial court reversibly erred in seating the two jurors rather than dismissing the array. In making that argument, appellant recognizes that the remedy fashioned by the trial court is constitutionally permissible under *Batson;* however, he maintains that the language of Article 35.261(b) mandates that the only remedy for *Batson* error is the dismissal of the array.

In order for an issue to be preserved on appeal, there must be a timely objection which specifically states the legal basis for the objection. *Rezac v. State,* 782 S.W.2d 869, 870 (Tex.Crim.App.1990). Specific objections are required so that the trial judge has an opportunity to rule and opposing counsel has an opportunity to remove the objection or supply other testimony. *Zillender v. State,* 557 S.W.2d 515, 517 (Tex.Crim. App.1977). An objection stating one legal basis may not be used to support a different legal theory on appeal. *Rezac,* 782 S.W.2d at 870.

■ With the exception of the right of trial by jury, a defendant can waive any trial error, including a *Batson* error, by failing to properly object or request the proper relief. *Thompson v. State,* 802 S.W.2d 840, 842 (Tex. App.—Houston [14th Dist.] 1990, pet. ref'd); Tex.Code Crim.Proc.Ann. art. 1.14 (Vernon Supp.1994).

In the present case, appellant asserted, in his trial objection, that a *Batson* error had occurred. After the prosecutor withdrew his peremptory challenges to the two jurors and the trial judge ordered that they be reseated, appellant acquiesced to the court's action but also reurged his previous motion for a mistrial. At no time, however, did he object to the trial court's remedy of seating the jurors rather than dismissing the array, nor did he mention Article 35.261 or object on the basis that the article mandatorily required dismissal of the array. Because he did not do so, he failed to preserve the question for our review. *See Sims v. State,* 792 S.W.2d 81, 82 (Tex.Crim.App.1990).

In effect, appellant has received the relief he requests. As such relief is consistent with *Batson,* his rights under the Fourteenth Amendment to the United States Constitution have not been violated. *Allen v. State,* 811 S.W.2d 673, 678 (Tex.App.—Dallas 1991, pet. ref'd).

Appellant's point of error is overruled, and the trial court's judgment is affirmed.