ACCEPTED
01-14-00660-CR
FIRST COURT OF APPEALS
HOUSTON, TEXAS
4/29/2015 3:01:58 PM
CHRISTOPHER PRINE
CLERK

**No. 01-14-00660-CR**

In the
**Court of Appeals**
For the
**First District of Texas**
At Houston

───────◆───────

FILED IN
1st COURT OF APPEALS
HOUSTON, TEXAS

4/29/2015 3:01:58 PM

CHRISTOPHER A. PRINE
Clerk

**No. 1377034**
In the 230th Criminal District Court
Of Harris County, Texas

───────◆───────

**RODASHIAN E. DEGAR**
*Appellant*
V.
**THE STATE OF TEXAS**
*Appellee*

───────◆───────

STATE'S APPELLATE BRIEF

───────◆───────

**DEVON ANDERSON**
District Attorney
Harris County, Texas

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741

**LAUREN BARD**
Assistant District Attorney

1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone: (713) 755-5826
Fax Number: (713) 755-5809
Hervey_Melissa@dao.hctx.net

ORAL ARGUMENT REQUESTED ONLY IF REQUESTED BY APPELLANT

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Texas Rule of Appellate Procedure 9.4(g) and Texas Rule of Appellate Procedure 39.1, the State requests oral argument only if appellant requests oral argument.

## IDENTIFICATION OF THE PARTIES

Pursuant to Texas Rules of Appellate Procedure 38.1(a) and 38.2(a)(1)(A), a complete list of the names of all interested parties, and the names and addresses of all trial and appellate counsel, is provided below:

*Complainant or Victim:*

**Chase Walker**

*Counsel for the State:*

**Devon Anderson**—District Attorney of Harris County

**Melissa P. Hervey**—Assistant District Attorney on appeal

**Lauren Bard, Kristina Daily**—Assistant District Attorneys at trial

Harris County District Attorney's Office
1201 Franklin Street, Suite 600
Houston, Texas 77002

*Appellant or Criminal Defendant:*

**Rodashian E. Degar**

*Counsel for Appellant:*

**Allen C. Isbell**—Defense Counsel on appeal

i

202 Travis Street, Suite 208
Houston, Texas 77002

**Lisa Andrews**—Defense Counsel at trial

1207 S. Shepherd Drive
Houston, Texas 77019

**Wendy Baker**—Defense Counsel at trial

21 Waterway Avenue, Suite 300
The Woodlands, Texas 77380

*Trial Judge:*

**Honorable Jay Burnett**—Presiding Judge of the 230th Criminal
District Court

## TABLE OF CONTENTS

STATEMENT REGARDING ORAL ARGUMENT ...............................................i

IDENTIFICATION OF THE PARTIES .................................................................i

TABLE OF CONTENTS................................................................................... ii

INDEX OF AUTHORITIES.............................................................................. iii

STATEMENT OF THE CASE............................................................................1

STATEMENT OF FACTS .................................................................................1

SUMMARY OF THE ARGUMENT ...................................................................5

REPLY TO APPELLANT'S SOLE POINT OF ERROR........................................5

    *I.*    *STANDARD OF REVIEW AND APPLICABLE LAW REGARDING A* BATSON
         *CHALLENGE* ...............................................................................6

*II. Appellant Failed to Preserve Error Regarding his Present Complaint that the Trial Court Erred by Not Dismissing the Array and Calling a New Venire Panel*.............................................7

*III. The Trial Court Did Not Err by Reinstating Juror 15, Instead of Dismissing the Array and Calling a New Venire Panel, Because Reinstatement is an Appropriate Remedy for a Batson Violation* ................................................................12

*IV. Even if the Trial Court Erred by Reinstating Juror 15, Instead of Dismissing the Entire Array, the Error was Harmless* ..............................................................................16

CONCLUSION AND PRAYER ............................................................18

CERTIFICATE OF COMPLIANCE.....................................................19

CERTIFICATE OF SERVICE ............................................................20

## INDEX OF AUTHORITIES

**CASES**

*Allen v. State*,
811 S.W.2d 673 (Tex. App.—
Dallas 1991, pet. ref'd)........................................................................11

*Batson v. Kentucky*,
476 U.S. 79 (1986) .................................................................... 6, 7, 12

*Boones v. State*,
170 S.W.3d 653 (Tex. App.—
Texarkana 2005, no pet.)................................................ 7, 14, 15, 16

*Broxton v. State*,
909 S.W.2d 912 (Tex. Crim. App. 1995)................................... 10, 11

*Craig v. State*,
82 S.W.3d 451 (Tex. App.—
Austin 2002, pet. ref'd) ................................................................ 14, 16

*Garza v. State*,
  10 S.W.3d 765 (Tex. App.—
  Corpus Christi 2000, pet. ref'd) ................................................................ 14, 16

*Georgia v. McCollum*,
  502 U.S. 42 (1993) ...................................................................................6

*Henry v. State*,
  729 S.W.2d 732 (Tex. Crim. App. 1987).................................................13

*Johnson v. State*,
  879 S.W.2d 313 (Tex. App.—
  Amarillo 1994, no pet.) ........................................................................ 10, 11

*Montgomery v. State*,
  810 S.W.2d 372 (Tex. Crim. App. 1990)...................................................7

*Moss v. State*,
  877 S.W.2d 895 (Tex. App.—
  Waco 1994, no pet.) .............................................................................. 15, 16

*Peetz v. State*,
  180 S.W.3d 755 (Tex. App.—
  Houston [14th Dist.] 2005, no pet.)....................................................... 14, 16

*Perea Velasco v. State*,
  No. 01-96-01075-CR, 1999 WL 12792 (Tex. App.—
  Houston [1st Dist.] Jan. 14, 1999, pet. ref'd)........................................ 15, 16

*Sims v. State*,
  768 S.W.2d 863 (Tex. App.—
  Texarkana 1989).......................................................................................13

*State ex rel. Curry v. Bowman*,
  885 S.W.2d 421 (Tex. Crim. App. 1993)........................................ 7, 12, 13, 16

*Wilson v. State*,
  71 S.W.3d 346 (Tex. Crim. App. 2002).................................................9, 11

**STATUTES**

TEX. CODE CRIM. PROC. ANN. art. 35.261................................................................6

TEX. PENAL CODE ANN. § 19.02(b)(1) .................................................................1

TEX. PENAL CODE ANN. § 19.02(b)(2) .................................................................1

**RULES**

TEX. R. APP. P. 9.4(g)......................................................................................... i

TEX. R. APP. P. 9.4(i)........................................................................................19

TEX. R. APP. P. 33.1(a)...............................................................................9, 11

TEX. R. APP. P. 38.2(a)(1)(A)............................................................................ i

TEX. R. APP. P. 39.1........................................................................................... i

**TO THE HONORABLE COURT OF APPEALS:**

## STATEMENT OF THE CASE

The State charged appellant by indictment with murder. (CR – 14);[1] *see* TEX. PENAL CODE ANN. § 19.02(b)(1); TEX. PENAL CODE ANN. § 19.02(b)(2). The jury found appellant guilty as charged in the indictment. (CR – 108, 118-19); (RR V – 45). On July 29, 2014, the trial court assessed appellant's punishment and sentenced him to confinement in the Texas Department of Criminal Justice, Correctional Institutions Division, for twelve years. (CR – 118-19); (RR VI – 42-43). The trial court also entered an affirmative deadly weapon finding in the court's written judgment of conviction and sentence. (CR – 118-19). Appellant timely filed written notice of appeal on July 29, 2014. (CR – 121).

————————◆————————

## STATEMENT OF FACTS

Around noon on May 15, 2012, Maurice White drove to Yates High School and picked-up appellant, Anthony Duhon, and Kenya Jackson to take them to buy marijuana from Chase Walker. (RR IV – 15, 18-20). White sat in the driver's seat of White's dark green 1998 Pontiac Grand Prix sedan, while Jackson sat in the

---

[1] The Clerk's Record consists of one volume, hereinafter referenced as (CR – [page number]). The Court Reporter's Record consists of seven volumes, which will be referenced as (RR [I-VII] – [page number]). State's Exhibits offered and/or admitted at trial are contained within Volume VII of the Reporter's Record, and will be referenced as (RR VII – SX [exhibit number]). References to Appellant's Brief will be cited as (AB – [page number]).

front passenger seat; appellant sat in the right rear passenger seat, behind Jackson; and Duhon sat in the left rear passenger seat, behind White. (RR III – 133); *see* (RR VII – SX 48). White drove appellant, Jackson, and Duhon to Walker's home and, when White's car pulled up, Walker got into the back of the car, sitting in the left, rear passenger seat behind White when Duhon slid into the middle of the backseat. (RR III – 116, 133); (RR IV – 20-21, 23); *see* (RR VII – SX 48). Once inside White's vehicle, Walker produced a glass jar containing marijuana from Walker's backpack, handed the drugs to appellant and Duhon, and told White to "make the block"—drive around the neighborhood—while appellant and Duhon examined and smelled Walker's marijuana and discussed the price for the drugs with Walker. (RR IV – 22-25, 39).

The negotiations over the drugs soon soured and Duhon loudly told Walker, "I ain't paying that much for the weed." (RR IV – 28-29, 88-89). Appellant then aggressively commanded Walker, "[N]igger, get out of the car[,]" and drew a loaded Glock 17 nine-millimeter pistol from appellant's jacket. (RR III – 146, 151); (RR IV – 29-30, 66-67, 89, 97); *see* (RR VII – SX 52). A struggle immediately began in the backseat as Walker drew his own gun—an unloaded, nonfunctional Jimenez Arms nine-millimeter pistol. (RR III – 30-31, 84); (RR IV – 67). The struggle was very brief, ending when appellant shot Walker in the head at point-blank range. (RR IV – 31-32); *see* (RR III – 37-40, 51-52) (explaining

2

that gunpowder, soot, and stippling in and around Walker's gunshot wound indicated that it was inflicted at "extremely close range"). Appellant's bullet entered Walker's forehead just above his left eyebrow, and then fragmented into three pieces before finally lodging at the back of Walker's skull. (RR III – 33, 35, 37-38, 43); *see* (RR VII – SX 2-4).

Panicking, White jumped out of the driver's seat, opened the left, rear passenger door of his car, pulled Walker's slumping body out of the backseat, and dumped it in the street. (RR IV – 32-36). Jackson, too, jumped out of White's car and inadvertently dropped his cell phone on the street near where Walker's body and Walker's belongings had been deposited. *See* (RR III – 71-73, 78, 81); (RR VII – SX 8, 14-19). White and Jackson got back into White's car, and White quickly sped away from the scene with appellant and Duhon still in the backseat. (RR IV – 36).

White drove back to the area around Yates High School and dropped-off appellant and Jackson. (RR IV – 37-38). When Jackson got out of White's car, Jackson took Walker's jar of marijuana with him; Jackson later sold the drugs and then divided the profits amongst himself, White, and Duhon. (RR III – 137-38, 193); (RR IV – 39, 42). Appellant grabbed his own belongings when he exited White's vehicle, including appellant's Glock—which appellant subsequently disposed of. (RR III – 138, 167). White then drove himself and Duhon to Duhon's

residence, where he and Duhon quickly began trying to clean Walker's blood off of the backseat of White's vehicle. (RR III – 136-37, 194); (RR IV – 40). White also told his father about the shooting, and his father hastily took White's car and had it repainted white. (RR III – 98-100, 134); (RR IV – 41-42); *see* (RR VII – SX 54-58).

Meanwhile, someone in the neighborhood where the shooting occurred called the police, and an ambulance soon arrived and transported Walker to the hospital. Walker survived for about twenty-two hours in the hospital before finally succumbing to his fatal gunshot wound at 11:57 AM on May 16, 2012. (RR III – 40); *see* (RR VII – SX 1).

The police recovered Jackson's cell phone from the crime scene and, not knowing who it belonged to, obtained a warrant to search it. By investigating photographs and data on the phone, the police eventually learned that the phone belonged to Jackson. (RR III – 122, 126-27). The police located Jackson and interviewed him about the murder, during which Jackson told the police Duhon's name. (RR III – 128). The police interviewed Duhon, who named White, and then interviewed White, who named appellant. (RR III – 129-31). The police interviewed appellant about the crime and appellant admitted that he shot Walker in the backseat of White's car, although he claimed that he did so in self-defense after Walker drew a gun. (RR III – 146, 196); *see* (RR VII – SX 52). At the

4

conclusion of these interviews, the police arrested appellant, Jackson, Duhon, White, and White's father for tampering with evidence for their actions in disposing of appellant's gun, stealing and selling Walker's marijuana, and scrubbing and repainting White's car, respectively.  (RR III – 136-38, 194).  After additional investigation and conversations with appellant, Jackson, Duhon, and White, the police also arrested appellant and Duhon for Walker's murder.  (RR III – 153, 165-67, 174-75).

———————◆———————

## SUMMARY OF THE ARGUMENT

If appellant preserved error regarding the matter, the trial court did not abuse its discretion by restoring Juror 15 to the jury panel, instead of dismissing the venire panel and calling a new array, because the trial court's alternative, non-statutory remedy was permissible to cure the *Batson* violation.  However, even if the trial court erred by reinstating Juror 15, instead of enacting the statutory remedy outlined in Article 35.261 of the Texas Code of Criminal Procedure, the error was harmless.

———————◆———————

## REPLY TO APPELLANT'S SOLE POINT OF ERROR

Appellant contends in his only point of error that the trial court abused its discretion by not dismissing the venire panel and calling a new array, pursuant to

Article 35.261 of the Texas Code of Criminal Procedure, after the court found that the State committed a *Batson* violation regarding a particular venire person.

## I.  *Standard of Review and Applicable Law Regarding a* **Batson** *Challenge*

The United States Supreme Court made clear in *Batson v. Kentucky*, 476 U.S. 79 (1986), and in *Batson's* progeny, that the Equal Protection Clause of the United States Constitution prohibits a party from using peremptory challenges to exclude otherwise qualified and unbiased potential jurors from the jury panel based solely on the jurors' race.  *See Batson*, 476 U.S. at 86-87 (holding that the Equal Protection Clause prohibits the prosecution from striking potential jurors solely because of the jurors' race); *see also Georgia v. McCollum*, 502 U.S. 42, 49-50 (1993) (holding that a defendant is constitutionally prohibited from engaging in purposeful racial discrimination when exercising peremptory challenges).  The Texas Legislature codified the *Batson* rule by enacting Article 35.261 of the Texas Code of Criminal Procedure.  TEX. CODE CRIM. PROC. ANN. art. 35.261.  Article 35.261 outlines a three-step process for a party seeking to make a "*Batson* challenge[,]" and also proposes a remedy that the trial court may enact if the court concludes that a *Batson* violation did in fact occur.  *See* TEX. CODE CRIM. PROC. ANN. art. 35.261 (establishing the three-part process of a *Batson* challenge and authorizing the trial court to dismiss the venire panel and call a new array upon concluding that a *Batson* violation occurred); *State ex rel. Curry v. Bowman*, 885

6

S.W.2d 421, 424-25 (Tex. Crim. App. 1993) (explaining that Article 35.216's remedy of dismissing the array is not the exclusive remedy for a *Batson* violation and that reinstatement of the excluded juror is also a permissible cure).

A trial court's remedy for a *Batson* violation is reviewed on appeal for abuse of discretion. *See Boones v. State*, 170 S.W.3d 653, 656-57 (Tex. App.—Texarkana 2005, no pet.) (finding that the trial court's remedy for a *Batson* violation—to reinstate the wrong-challenged juror—was not an abuse of the court's discretion). A trial court should be found to have abused its discretion only when the court's ruling was arbitrary or unreasonable, or when the court acted without reference to any guiding rules or principles. *Montgomery v. State*, 810 S.W.2d 372, 380 (Tex. Crim. App. 1990).

### II. Appellant Failed to Preserve Error Regarding his Present Complaint that the Trial Court Erred by Not Dismissing the Array and Calling a New Venire Panel

At the conclusion of voir dire, after the State and appellant made their peremptory strikes, appellant made a *Batson* challenge to the State's strikes of Jurors 15, 16, and 29, asserting that the prosecution improperly struck those venire members solely because they are African-American—the same race as appellant. (RR II – 143-44, 146-47); *see generally Batson*, 476 U.S. at 86-87. The trial court sustained appellant's *Batson* challenge regarding Juror 15, only, and then the following discussion occurred:

7

[Trial Court]: Okay. All right. And her number was what?

[State]: No. 15, Your Honor.

[Trial Court]: 15?

[State]: Yes, Your Honor.

[Trial Court]: I will grant the Batson and seat the juror. That's it.

[Defense]: Okay. So, we seat her and then who do we seat after that?

[Trial Court]: We have to take a look. So, what we do is - -
Let's go off the record.

(Brief pause).

[Trial Court]: Okay. We're back on the record on your motion.

[Defense]: I would object to the panel - - the proposed remedy is to seat Juror No. 15, which then removes Juror No. 45 who is also an African-American female. So, I would object to the panel with that remedy.

[Trial Court]: Okay. That's overruled.

[Defense]: And because my objection is overruled, as part of trial strategy, I would rather have Juror No. 45 seated than Juror No. 15 seated.

[Trial Court]: Juror 15 is not seated. You'd rather keep Juror 45; is that correct?

[Defense]: Correct. And that's your trial strategy.

[Defense]: It is, Your Honor.

[Trial Court]: All right. That's what we'll do. We'll keep the jury as it is.

(End of conference). (RR II – 152-55) (parentheticals in original).

8

As this exchange makes clear, the trial court's remedy for the *Batson* violation was to reinstate the erroneously-challenged juror, Juror 15, to the jury panel, which would have the effect of replacing the twelfth-seated regular juror, Juror 45, with Juror 15. (RR II – 152-54). Appellant objected to the court's proposed substitution, but did not move the court to dismiss the array or object to the court's failure to do so, and did not request any alternative form of relief from the trial court. (RR II – 154). Accordingly, appellant's complaint on appeal—that the trial court erred by not dismissing the array and calling a new venire panel— does not comport with appellant's complaint at trial—that the trial court's proposed remedy to reinstate Juror 15, which would remove Juror 45, was objectionable—and, thus, may not now be asserted for the first time. *Compare* (AB – 9-12) *with* (RR II – 154); *see* TEX. R. APP. P. 33.1(a) (establish that, to preserve error for appellate review, a defendant must first present to the trial court a timely request, objection, or motion clearly stating the specific factual and legal basis for the ruling the defendant seeks, and then must fully pursue the matter by either obtaining an adverse ruling from the trial court on the request, objection, or motion, or by objecting to the trial court's refusal to rule on the request, objection, or motion.); *Wilson v. State*, 71 S.W.3d 346, 349 (Tex. Crim. App. 2002) (reiterating that the defendant's "point of error on appeal must comport with the objection made at trial."); *Broxton v. State*, 909 S.W.2d 912, 918 (Tex. Crim. App.

9

1995) (explaining that a defendant's request, objection, or motion stating one legal theory may not be relied upon to support a different legal theory advanced for the first time on appeal).

Appellant cites no cases which hold that a defendant's mere objection to the trial court's non-statutory, *Batson*-violation remedy of reinstating the erroneously-challenged juror, without also moving the trial court to dismiss the array and summon a new venire panel, or objecting to the trial court's failure to do so, is adequate to preserve error regarding the trial court's decision to enact that alternative remedy in lieu of dismissing the array and calling a new one. In other words, appellant fails to provide any legal authority which supports appellant's suggestion that a defendant's mere objection to the trial court's non-statutory, *Batson*-violation remedy of reinstating a juror is adequate, without more, to trigger an obligation that the trial court *sua sponte* dismiss the array and call a new venire panel. Instead, case law demonstrates that a defendant does not preserve error regarding the trial court's option to remedy a *Batson* violation by restoring the excluded juror, instead of by enacting the dismissal-remedy authorized by Article 35.261, when the defendant does not seek that specific, statutory remedy or object to the trial court's failure to effect it. *See Johnson v. State*, 879 S.W.2d 313, 317 (Tex. App.—Amarillo 1994, no pet.) (concluding that the defendant failed to preserve error for his complaint on appeal that the trial court erred in reinstating

two jurors rather than dismissing the array and calling a new venire panel when the defendant did not object on that basis at trial); *Allen v. State*, 811 S.W.2d 673, 678 (Tex. App.—Dallas 1991, pet. ref'd) (holding that any error by the trial court in not following Article 35.261 was not preserved when "[the defendant] never objected to the trial court's failure to dismiss the jury and summon a new array[, and]...never even suggested to the trial court that article 35.261 controlled [the] situation.").

Accordingly, if, as appellant now claims on appeal, appellant's desired cure for the *Batson* violation regarding Juror 15 was that the trial court dismiss the array and summon a new venire panel, appellant was required to notify the court of appellant's wishes by clearly and specifically moving the court to execute that remedy, or by expressly objecting to the court's refusal to do so, to be able to complain of the trial court's conduct on appeal. *See Johnson*, 879 S.W.2d at 317; *Allen*, 811 S.W.2d at 678. Aside from the fact that appellant's failure to request such a remedy demonstrates that appellant did not actually want an entirely new array, appellant's failure to seek such amelioration or to object to its absence waived the matter for appellate review. *See* TEX. R. APP. P. 33.1(a); *Johnson*, 879 S.W.2d at 317; *Allen*, 811 S.W.2d at 678; *see also Wilson*, 71 S.W.3d at 349; *Broxton*, 909 S.W.2d at 918. Appellant's point of error should be rejected at this juncture.

***III. The Trial Court Did Not Err by Reinstating Juror 15, Instead of Dismissing the Array and Calling a New Venire Panel, Because Reinstatement is an Appropriate Remedy for a* Batson *Violation***

Even assuming that appellant preserved error, appellant's argument fails because the reinstatement of a wrongly-challenged juror is a well-accepted, alternative remedy to Article 35.261's statutory remedy of dismissing the array and summoning a new one.

In *State ex rel. Curry v. Bowman*, 885 S.W.2d 421 (Tex. Crim. App. 1993), the Texas Court of Criminal Appeals observed that the Supreme Court in *Batson* specifically declined to prescribe a particular remedy that must be enacted following a *Batson* violation. *Bowman*, 885 S.W.2d at 424; *see Batson*, 476 U.S. at 99 ("We decline...to formulate particular procedures to be followed upon a defendant's timely objection to a prosecutor's challenges."). Rather, the Supreme Court left the task of creating an appropriate remedy to the state and federal trial courts, and "express[ed] no view on whether it is more appropriate in a particular case, upon a finding of discrimination...for the trial court to discharge the venire and select a new jury from a panel not previously associated with the case...or to disallow the discriminatory challenges and resume selection with the improperly challenged jurors reinstated on the venire." *Batson*, 476 U.S. at 100 n.24 (internal citations omitted); *Bowman*, 885 S.W.2d at 424.

The *Bowman* court then determined that the sole remedy provided by Article 35.261 "may be unconstitutionally restrictive" and "may defeat the purpose of the protection" assured by *Batson* and its progeny, given that "the evolving interpretations of *Batson* instruct that a *Batson* violation is not merely harmful to the parties involved but to the individual veniremember as well"—who would still not be permitted to participate in the process if dismissal of the array were the only acceptable remedy for the wrongful exclusion of that veniremember in violation of *Batson*. *Bowman*, 885 S.W.2d at 424-25. Accordingly, the Court of Criminal Appeals acknowledged that Article 35.261 should be interpreted in a "flexible" manner to vindicate the prospective juror's right to serve; held that, "where a *Batson* claim is sustained[,] the trial court may fashion a remedy in its discretion consistent with *Batson* and its progeny"; and concluded that the trial court's remedy of reinstating the veniremember that was wrongly-excluded in violation of *Batson* was one such appropriate, alternative correction to the statutory remedy listed in Article 35.261. *Bowman*, 885 S.W.2d at 425; *see also Henry v. State*, 729 S.W.2d 732, 737 (Tex. Crim. App. 1987) (listing the disallowance of a peremptory strike as an acceptable remedy for a *Batson* violation regarding the erroneously-stricken juror); *Sims v. State*, 768 S.W.2d 863 (Tex. App.—Texarkana 1989) (concluding that, given the purpose for which Article 35.261 was enacted, that that statute "does not require in all cases that a new array be called, but that the trial

13

judge has the discretion to" either dismiss the array and a call a new one, or reinstate the excluded juror), *pet. dism'd as improvidently granted*, 792 S.W.2d 81 (Tex. Crim. App. 1990).

Following *Bowman*, numerous Texas appellate courts—including this Court—have affirmed that the remedy established by Article 35.261 is not exclusive and that a trial court is permitted to correct a *Batson* violation by reinstating the excluded veniremember to the jury panel, instead. *See, e.g., Peetz v. State*, 180 S.W.3d 755, 760 (Tex. App.—Houston [14th Dist.] 2005, no pet.) ("As a [*Batson*-violation] remedy, the court appropriately empaneled the two wrongfully-struck jurors."); *Boones v. State*, 170 S.W.3d 653, 656-57 (Tex. App.—Texarkana 2005, no pet.) (finding that the trial court did not abuse its discretion by reinstating a wrongly-excused juror to the jury, rather than dismissing the entire array); *Craig v. State*, 82 S.W.3d 451, 453 n.1 (Tex. App.—Austin 2002, pet. ref'd) ("[T]he remedy prescribed by [A]rticle 35.261 is not exclusive and...a trial court is authorized to remedy a *Batson* error by reinstating the excluded venire member to the trial jury."); *Garza v. State*, 10 S.W.3d 765, 769-70 (Tex. App.—Corpus Christi 2000, pet. ref'd) ("[A] trial court's reinstatement of improperly excluded veniremembers to the jury, rather than dismissing the entire array, is an acceptable remedy for constitutional purposes."); *Perea Velasco v. State*, No. 01-96-01075-CR, 1999 WL 12792, at *2 (Tex. App.—Houston [1st Dist.] Jan. 14,

1999, pet. ref'd) (not designated for publication) ("Instead of dismissing the entire array, a trial judge may seat a prospective juror against whom a trial prosecutor has incorrectly exercised a peremptory challenge."); *Moss v. State*, 877 S.W.2d 895, 897-98 (Tex. App.—Waco 1994, no pet.) (stating that the remedy provided by Article 35.261 is not exclusive and that one such allowable alternative remedy is for the trial court to disallow the State's strike and reinstate the excluded juror on the jury panel).

For example, in *Boones v. State*, 170 S.W.3d 653 (Tex. App.—Texarkana 2005, no pet.), the State used peremptory challenges to strike six of the eight African-American veniremembers within the "strike range." *Boones*, 170 S.W.3d at 656. The defense made a *Batson* challenge to the State's six strikes. *Id*. The trial court found that the State had race-neutral reasons for striking all but one of those six jurors and, to remedy the *Batson* violation regarding the remaining veniremember, ordered that that juror be reinstated on the jury panel. *Id*. On appeal, as here, the defendant claimed that the trial court's remedy of reinstating the juror, rather than dismissing the array and summoning a new array, contravened Article 35.261 and, thus, was an abuse of discretion. *Boones*, 170 S.W.3d at 656-57. The Sixth Court of Appeals at Texarkana disagreed and affirmed the trial court's decision, reiterating that Article 35.261's dismissal-remedy is not the only permissible cure for a *Batson* violation, and that the

15

reinstatement of a wrongly-excluded juror is an acceptable alternative. *Boones*, 170 S.W.3d at 657.

Just as in *Bowman*, *Boones*, and the other cases cite above, the trial court in appellant's case did not abuse its discretion by restoring Juror 15 to the jury panel to remedy the *Batson* violation because the court's action was an acceptable, alternative cure to the relief authorized by Article 35.261. *See Bowman*, 885 S.W.2d at 424-25; *Peetz*, 180 S.W.3d at 760; *Boones*, 170 S.W.3d at 656-57; *Craig*, 82 S.W.3d at 453 n.1; *Garza*, 10 S.W.3d at 769-70; *Perea Velasco*, 1999 WL 12792, at *2; *Moss*, 877 S.W.2d at 897-98. Accordingly, appellant's arguments to the contrary lack merit, and appellant's point of error should be overruled.

### IV. Even if the Trial Court Erred by Reinstating Juror 15, Instead of Dismissing the Entire Array, the Error was Harmless

Appellant was not harmed by the trial court's error, if any, in restoring Juror 15 to the jury, instead of dismissing the array and calling a new venire panel, because appellant's jury panel consisted entirely of fair-minded and qualified people, all of whom expressed that they would follow the law and the trial court's instructions, and that they would render a true verdict based upon the evidence presented, or the lack thereof. *See* (RR II – 22-28, 156). Additionally, appellant's jury panel was racially diverse and contained eight people of a minority race, three of whom were African-Americans, like appellant. (RR II – 144, 147). The trial

16

court's reinstatement of Juror 15 and proposed substitution of Juror 15 for the twelfth-seated regular juror, Juror 45, did nothing to alter the racial composition of appellant's jury panel, given that both Jurors 15 and 45 were African-American women, or to otherwise harm appellant. *See* (RR II – 148, 154).

In fact, the trial court's resolution of the *Batson* violation in this case actually benefitted appellant, rather than harming him. The trial court permitted appellant to craft the jury more to appellant's favor by granting appellant's request that Juror 45 remain on the panel, in lieu of the trial court's remedy that Juror 15 be reinstated and the twelfth juror empaneled, Juror 45, be excused, when appellant explained to the court that, for reasons related to trial strategy, appellant preferred to have Juror 45 seated on the jury panel instead of Juror 15. (RR II – 154). The result of this was that appellant was allowed the choice of having either Juror 15 or Juror 45 on appellant's jury panel, which put appellant in a better position than if the State had never challenged Juror 15 to begin with, given that, in that scenario, Juror 15 would have been empanelled from the outset and Juror 45, appellant's preferred jurist, would not have been reached. Thus, even if the trial court's remedy of reinstating Juror 15 to appellant's jury was error, the error was harmless under the circumstances. Appellant's sole point of error should be overruled.

———————◆———————

## CONCLUSION AND PRAYER

For the foregoing reasons, the State respectfully submits that even if appellant preserved error regarding his claim that the trial court abused its discretion by reinstating a wrongly-excluded juror following a *Batson* violation, instead of dismissing the array and calling a new venire panel, the trial court's remedy was a proper alternative to the statutory relief afforded by Article 35.261. Further, appellant benefitted from the trial court's remedy, rather than being harmed by it. Thus, the State respectfully prays that this Court will overrule appellant's sole point of error and will affirm appellant's conviction and sentence.

Respectfully submitted,

**DEVON ANDERSON**
District Attorney
Harris County, Texas

/s/ Melissa Hervey

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

## CERTIFICATE OF COMPLIANCE

Pursuant to Texas Rule of Appellate Procedure 9.4(i), the undersigned attorney certifies that there are 4,000 words in the foregoing computer-generated document, based upon the representation provided by Microsoft Word, the word processing program that was used to create the document, and excluding the portions of the document exempted by Rule 9.4(i)(1).

/s/ Melissa Hervey

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

## CERTIFICATE OF SERVICE

This is to certify that the undersigned counsel has directed the e-filing system eFile.TXCourts.gov to serve a true and correct copy of the foregoing document upon Allen C. Isbell, appellant's attorney of record on appeal, on April 29, 2015, at the following e-mail address, through the electronic service system provided by eFile.TXCourts.gov:

allenisbell@sbcglobal.net

/s/ Melissa Hervey

**MELISSA P. HERVEY**
Assistant District Attorney
Harris County, Texas
State Bar Number: 24053741
1201 Franklin Street, Suite 600
Houston, Texas 77002
Telephone (713) 755-5826
Fax Number (713) 755-5809
Hervey_Melissa@dao.hctx.net

20